# THE MAYOR AND CITY COUNCIL OF BALTIMORE
## ET AL. vs. ALBERT B. LYMAN.

*Superintendent of Public Schools in Baltimore City Not a Municipal Official Within the Meaning of the Charter Requiring Such Officials to be Registered Voters.*

The new charter of Baltimore City (Act of 1898, ch. 123, sec. 26), provides that all municipal officials, except females, shall be registered voters of the city. Under section 25 the Mayor is vested with the power to appoint all heads of departments and heads of sub-departments and municipal officers not embraced in a department, subject to confirmation by the Second Branch of the City Council. Certain other officials are elected by the people and two are appointed by a joint convention of the two branches of the City Council. The 28th section provides that the heads of departments and of sub-departments, municipal officers not embraced in a department, and all special commissions or boards shall have the sole power of appointment and removal at pleasure of all deputies, assistants, clerks and subordinate employees employed by them, unless otherwise provided for. Under section 100 the Superintendent of Public Instruction and his assistants are appointed by the Board of School Commissioners. This board constitutes the head of the Department of Education, and all executive power relating to the public schools is vested in it. The superintendent appointed by the school board is not required by law to take an official oath, or to give bond; he has no commission issued to him and has no fixed or definite tenure of office, but holds at the pleasure of the board. The person appointed superintendent by this board was not a registered voter of the city, and the bill in this case was filed by a resident taxpayer to enjoin the payment of the salary to such appointee upon the ground that, not being a registered voter, he was ineligible to the office.

*Held*, that the Superintendent of Public Schools is not a municipal official within the meaning of the provision of the charter requiring such officials to be registered voters, but is merely an employee or agent of the school board, and that consequently the bill in this case must be dismissed.

Appeal from an order of Circuit Court, No. 2, of Baltimore City (STOCKBRIDGE, J.), overruling a demurrer to the bill of complaint, and requiring the defendants to file such answer as the merits of the case and the practice of the Court require.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and JONES, JJ.

*Edgar H. Gans* (with whom were *Wm. A. Fisher* and *Olin Bryan* on the brief), for the appellants:

It is to be noted that the expression to be construed is not "officer," or "public officer," or "municipal officer," but "municipal official," a distinction, the importance of which will hereafter appear when we analyze the charter, in which we shall find that the expression "municipal official" has a fixed, definite and invariable meaning whenever it is used.

(a) *The words "officer" or "public officer" may have a popular sense.* As, for example, in *Rowland* v. *Mayor*, 83 N. Y. 376, where the statute prohibited a board from increasing the salaries of those "now in office," it was held that an *attendant of the Supreme Court* was within the meaning of the expression "in office," as the intent of the statute was to reach "all persons," who under any name were the recipients of salaries from the city treasury, and in this *extended sense* the Act should be construed." So, in *Vaughn* v. *English*, 8 Cal. 39, a clerk in the office of Secretary of State, was held to be an officer within the meaning of an Act prohibiting the reduction of salary; because "the terms of the Act of 1856 we think show conclusively that the Legislature intended the term of office to include *all persons employed by the government.*" So, in *U. S.* v. *Hendee*, 124 U. S. 309, a paymaster's clerk in the navy, is within the meaning of the Act of March 3rd, 1883, respecting the longevity pay of officers, because the intention of Con-

gress was to use the word officer in its popular and more general sense. So also in *State* v. *Stanley,* 66 N. C. 59, the case called for the application of the popular construction ; for after defining "office," they say : "This we consider to be the true definition of public officers in its *original broad sense.*"

Obviously these authorities throw no light upon the question at bar unless it becomes apparent by an examination of the city charter that the expression "municipal officials" is to be construed in the popular, most extended sense of "public officer."

(b) *The words "officer," or "public officer," may have a restricted sense.* This is evident, and the restricted meaning is always determined by the context of the law in which the expressions occur. Thus, in *State* v. *Putnam,* 35 Iowa, 563, a road supervisor was decided not to be an officer, in the sense of the statute making it a criminal offense "to resist *any officer* of this State," because the intention of the Legislature was confined to officers authorized to execute process. So, in *U. S.* v. *Germaine,* 99 U. S. 508, the case in which the Supreme Court refer to *U. S.* v. *Hartwell,* 6 Wall. 392, and explain the sense in which it is now an authority, a civil surgeon appointed by the Commissioner of Pensions is not an officer of the United States, because not appointed by the President, a Court of law, or the head of a department under Constitution, Article 2, section 2, although in the popular sense undoubtedly an officer. So also in Maryland, a school commissioner, although a "civil officer" in the general sense, is not a "civil officer" within the meaning of the Maryland Constitution. *Board* v. *Goldsborough,* 90 Md. 193.

(c) *The same apparent position may be an officer in one State and not in another.* Thus, in Ohio, a medical superintendent of an Insane Asylum is an officer within the meaning of the Constitution, that no man shall have an office unless having the qualification of an elector, the statute giving a definite term and requiring an official oath. *State* v. *Wilson,* 29 Ohio St. 348. But in New York, under a statute forbidding *"city officers"* from being interested in city contracts, the Medical Superinten-

dent of an Insane Asylum is not a "*City officer.*"  *McDonald*
v. *Mayor*, 32 Hun. 91.   The true rule of construction is fully
declared by this Court in the recent case of *Board* v. *Golds-
borough*, 90 Md. 206.

There are criteria by which the language of the charter
may be tested.   1. *Delegation of sovereign power.*   The most
important characteristic which distinguishes an office from an
employment is that the creation of an office involves a delega-
tion to the individual of some of the sovereign functions of
government to be exercised by him for the benefit of the pub-
lic ; and it is safe to say that unless the powers conferred are
of this nature the individual is not a public officer.   *Mechem,
Public Offices*, secs. 1, 2, 4, note 2.   3 *Greenlf.* (Me.) 481, fol-
lowed in *Board* v. *Goldsborough*, 90 Md. 208.

2. *Oath.*—This criterion is given high place in Maryland.
Here, it is said by the Court, in *Board* v. *Goldsborough*, 90 Md.
207, "*probably the true test to distinguish officers from simple
servants or employees is the obligation to take the oath prescribed
by law*," adopting *Collins* v. *New York*, 3 Hun. 680; *Bunn* v.
*People*, 45 Ill. 397.   It may be said that a person who has
neither of these characteristics would certainly not be a public
officer.

3. *Official Bond.*—The requirement for a bond is a strong
indication that the person is an officer.   *Throop* v. *Langdon*,
40 Mich. 682; *Shelby* v. *Alcorn*, 36 Miss. 273; *State* v. *May*,
106 Mo. 105.

4. *Tenure.*—This is not indispensable, but is also a strong
indication.   *Mechem*, section 8; *Throop* v. *Langdon*. 40 Mich.
682; *United States* v. *Hartwell*, 6 Wall. 385; *Florida* v. *Hocker*,
39 Fla. 477.

These criteria are summed up in two leading cases.   *Olm-
stead* v. *Mayor*, 42 N. Y. Sup. Ct. 487; *Throop* v. *Langdon*, 40
Mich. 682.

5. *Name Office or Officer.*—If the party whose position is
in question is called an " officer " this is an indication that his
position is an office.   But the indication is a slight one, and
easily explained or rebutted.   Thus, in *State* v. *Kennon*, 7

Ohio Stat. 557–8, it is declared "the official or unofficial character of the defendants is to be determined not by their name nor by the presence or absence of official designation." Again, the word office was used in two Acts of Congress, and in one case it was held that the party was not an officer (*United States* v. *Mouat*, 124 U. S. 306–8), and in the other that he was. *United States* v. *Hendee*, 124 U. S. 309. The cases cited by the appellee to show that the designation of the position as an office in the statute creating it makes it an office, are found upon examination not to sustain any such contention, as everyone which states the facts shows other criteria. Thus, in *State* v. *Wilson*, 29 Ohio St. 348, the officer was provided with an official seal, made annual reports, took the oath of office and had a definite term. Again, in *State* v. *May*, 106 Mo. 505, the officer had a definite term and until his successor qualified and gave an official bond, and decision expressly put on this ground.

An examination of the charter will demonstrate the following propositions : A. *All persons in the service of the city are divided into two classes.* a. *Municipal officials.* b. *Employes.*

B. *The first class, to wit, municipal officials, are composed of the heads of departments, heads of sub-departments, and municipal officers not embraced in a department.*

C. *The first class, to wit, municipal officials, are distinguished from employees by the following invariable characteristics:* 1. Method of appointment. 2. Special designation. 3. Exercise of part of sovereign power. 4. Official oath. 5. Official bond. 6. Definite tenure. 7. Power to make rules and regulations. Official records.

D. *All others in the service are employes, appointed by the municipal officials, and having none of the characteristics above mentioned.*

From this division it will be observed that the employees are much more numerous than the municipal officials. This is customary. The Supreme Court of the United States say in *United States* v. *Germaine*, 99 U. S., 501, after declaring that a surgeon appointed by Commissioner of Pensions is not an offi-

cer, "though he may be an agent or employee working for the government and paid by it, as *nine-tenths of the persons* rendering service to the government undoubtedly are, without thereby becoming its officers." Under the city charter there are eight executive departments, and seven municipal officers not embraced in a department. Of these eight departments, five have sub-departments and three no sub-department. Each department and each sub-department has a head. The whole scheme of the new charter is to place executive responsibility upon these heads of departments, heads of sub-departments and municipal officers not embraced in a department. All under them are employees employed by them. (See sec. 31.)

1. *Method of Appointment.*—*Section 25* shows that there are a number of persons appointed by the Mayor and Second Branch of the Council, and also that there are two persons elected by the people, comptroller (sec. 33) and surveyor (sec. 205), and two others appointed by joint-convention of the two branches of council, city register (sec. 35) and public printer (208.)

Who are these persons who are thus appointed by the Mayor and Second Branch, by a joint-convention of the branches or elected by the people? From the sections cited, in connection with sec. 31, it appears that they are *heads of departments, heads of sub-departments* and *municipal officers not embraced in a department.* No other persons are appointed in this way. The appointment of all other persons in the city service is provided for by *section 28.* Now the Superintendent of Public Instruction is not appointed by the Mayor and Second Branch, nor by joint-convention, nor elected by the people, but is appointed under section 28 by the head of a department. See *United States* v. *Germaine,* 99 U. S. 508.

2. *Special Designation.*—After section 25 provides that the Mayor and Second Branch shall appoint heads of departments, heads of sub-departments and municipal officers not embraced in a department, how does it proceed to designate them? Bearing in mind that the Mayor appoints no other persons than those just designated, the section (25) proceeds: "The

terms of all *municipal officials* appointed by the Mayor shall
be, etc.   *   *   *   all *municipal officials* appointed  by  the
Mayor shall be appointed in the month," etc.   *   *   *   "but
the Mayor shall appoint said *officials*," etc.   Here we observe
that the persons appointed by the Mayor are repeatedly des-
ignated *municipal officials*, and as the Mayor appoints only
heads of departments, heads of sub-departments and munici-
pal officers not embraced in a department, those classes of
persons and *municipal officials* are synonomous.   Again, in
sec. 25, "All persons appointed by the Mayor, as well as
those *municipal officials* elected by the people, or by joint-con-
vention of the City Council shall, &c.," and these persons are
twice more in this section called "officials."   Now the per-
sons elected by the people or appointed by a joint-convention
of the two branches are the heads of sub-departments or mu-
nicipal officers not embraced in a department.

Thus again, the name "municipal officials" is expressly ap-
propriated by the law to describe, point out and identify the
· heads of departments, heads of sub-departments, or municipal
officers not embraced in a department, and the conclusive
thing to observe is that *nowhere* in the charter is the expression
*municipal official ever used to describe any one except the head of
a department, the head of a sub-department or a municipal offi-
cer not embraced in a department.*   The expression *"municipal
official"* used in section 26, which provides, "all *municipal
officials*, except females, shall be registered voters of the city
of Baltimore," should be given the same meaning as that
found in section 25, unless there is strong reason for a differ-
ent construction.   This rule of construction was formulated
by this Court in *Board* v. *Goldsborough*, 90 Md. 202, where
the Court says : "Where the same language is used in differ-
ent clauses of the Constitution upon the same or similar sub-
jects, it must receive the same construction unless some par-
ticular reason to the contrary can be assigned."   Therefore,
the Superintendent of Public Instruction, not being the head
of a department or sub-department, or a municipal officer not
embraced in a department, is not a municipal official and need
not be a registered voter.

3. *Exercise of part of executive power.*—We have seen that this is the main characteristic of a public officer, and whatever else he may have, if he have not this note or mark he has no claim to be classed as an official. Now where is the executive power vested under our charter ? *Section 31* provides as follows : "The executive power of the Mayor and City Council of Baltimore shall be *vested* in the Mayor, the departments, sub-departments, municipal officers not embraced in a department, etc." For all educational matters there is a department known as *Department of Education,* which has no sub-department. Now the Department of Education "is composed of the Board of School Commissioners (section 31), and the head of the department is "the Board of School Commissioners." (Section 99.) All executive power concerning education is therefore expressly vested in and limited to the Board of School Commissioners. They are therefore officers and, so far as the language of the charter goes, municipal officials. No part of the power is vested in the Superintendent of Public Instruction, who is the employee of the board, and is not a department, sub-department or municipal officer not embraced in a department ; he is therefore not a municipal official.

4. *Official oath.*—Only heads of departments, heads of sub-departments and municipal officials not embraced in a department are required to take the oath. A practical way, therefore, to tell whether a person in the service of the city is a "municipal official" is to simply inspect the Mayor's test-book. No other name is found in that book but the name of the head of a department, the head of a sub-department or of a municipal officer not embraced in a department. The Superintendent of Public Instruction does not take any oath of office, does not sign a test-book, has no commission issued to him ; and so again for this reason is not a "municipal official."

5. *Official bond.*—When we reach *section 31* of the charter, the expression "municipal officials" is so well understood that the law-makers take no care in defining it. The section (as to bonds) reads : "All municipal officials," unless otherwise provided for by laws or ordinances, shall give bond to the city

for the faithful discharge of their duties, to be approved by the Mayor, and in such penalties as may be prescribed by laws or ordinances." Who are meant in this section by "municipal officials?" We have just seen that "municipal officials" in the prior sections means a definite class of people who are appointed by the Mayor or joint-convention, or elected by the people, in whom is vested the executive power of the city, who are obliged to take an oath, sign a text-book and receive a commission. These persons are heads of departments, heads of sub-departments and municipal officers not embraced in a department. Bond and oath usually go together. Sometimes a greater number of persons are obliged to take an official oath than give an official bond, but the converse never happens.

6. *Definite tenure.*—The class of persons so often described, heads of departments, heads of sub-departments and municipal officers not embraced in a department, are the *only class* of persons in the executive service who have a definite tenure, which we have seen characterizes a public office. Those appointed by the Mayor have terms of four years ; the comptroller and register have four years, and the surveyor and Public Printer have two years. (See secs. 33, 35, 205, 288.) And all of them hold their office until their successors are appointed or elected and qualified. (Sec. 27.) All other persons in the public service are appointed by the first official class at pleasure. (Sec. 28.) This does not mean that they have a term of office ; for, as said by this Court in *Field* v. *Malster*, 88 Md. 696. "The word 'term,' when used with refence to the tenure of office, ordinarily refers to a fixed and definite time, and does not apply to appointive officers held at the pleasure of the appointing power." The Superintendent of Public Instruction is appointed by the School Board at its pleasure, and therefore not having a definite tenure of office, is again, for this reason, not an officer.

7. *Power to make rules and regulations. Official records.*— Tested by this last criterion the result is the same. The heads of departments, heads of sub-departments, and municipal officials not embraced in a department are alone vested with

power to pass rules and regulations for the government of their respective departments, and their records are obliged to be kept and a certified copy thereof is made evidence in a Court of law. (Scc. 31.) Therefore it is clear to demonstration that the charter intended to establish two distinct and clearly marked classes of persons in the service of the city. 1st. *The official class.*   2nd. *The employee class.*

*The first or official class* is appointed in a definite way ; is given the distinctive appellation " municipal officials ;" is vested in conjunction with the Mayor with the executive power ; gives an official oath ; is found in the official test-book ; receives a formal commission ; gives official bond ; has a definite term of service and is put in a position of power and responsibility, with the right to make rules and regulations for the government of their employees. *The second or employee class* are merely the appointees of the *first class*, responsible to them, called indifferently deputies, assistants, clerks, subordinate employees, and sometimes, in a loose popular sense, officers ; vested with no power ; giving no oath ; not in the test-book ; receive no commission ; give no bond ; have no term of service ; have no independent responsibility, but are subject in all the details of their work to the guidance and control of the " municipal officials " who appoint them. The Superintendent of Public Instruction comes under this *second class*, and therefore is an employee and not a " municipal official." (Sections 100–1.)

It is urged, however, that the Superintendent of Public Instruction is a " municipal official " because his duties are defined by law, and he is referred to in the section regulating his duties as an· " officer." A similar expression was construed in New York. There the board of charities were authorized " to appoint and remove from time to time, storekeepers and all other *officers*, subordinates and assistants necessary for the proper discharge of their duties, and to remove them at pleasure. " Held, that the counsel appointed by them, a position probably of as high dignity as any in their gift, was not an officer by reason of this language. *Quintard* v. *City of New York*, 64 N. Y. Supp. 904, 908.

The conclusions we have reached are supported by outside authority, in so far as such authority is directly pertinent. See *State* v. *Vickers*, 58 Ohio St. 730, in which it was held that a superintendent of schools is not an officer, and *Butler* v. *Regents*, 32 Wis. 131 (followed in 103 U. S. 5), in which it was held that the professor in a State university and its teachers are not public officers.

Independently of all the aforegoing argument, if it could be held by the Court that the Superintendent of Public Instruction was an officer, his position is such as to make him a State officer and not a municipal official. This is shown by the decision of this Court in *Hooper* v. *New*, 85 Md. 574, in which, speaking of the School Commissioners of Baltimore City, before the new charter, the Court says: " If it be assumed, though it be by no means conceded (and certainly it is not now decided) that the School Commissioners are municipal officers, as contradistinguished from agents of the State selected by the municipality under power delegated by the State to carry on within the limits of the city beneficent purposes of the general school system of the commonwealth, just as a State tax collector in a county is an officer of the State, though selected by the County Commissioners, still the predominant proposition, etc."

Now here is a clear intimation the School Commissioners under the old law were State officers. The Constitution, Article 8, section 1, required the Legislature to establish a system of free schools throughout the State. Under this provision the Legislature did establish a uniform system throughout the State, and as to Baltimore city delegated to it the power to establish a system in the city, which the Mayor and City Council accordingly did by ordinance. If, therefore, the School Commissioners of Baltimore City could, under those circumstances, be regarded as State officers, how much more so now, when the Legislature, in accordance with the constitutional mandate, establishes itself a school system for the city, designates the persons to manage and control it and fixes and defines their duties.

*Karl A. M. Scholtz* and *George T. Mister* for the appellee:

It is obvious in the enacting of section 26, the Legislature was simply declaring a principle peculiar to our system of government " of the people and *for* the people," and recognizing that under a system of " home rule" only citizens and voters should be eligible to and hold office; *i. e.*, positions of any and every kind under the government, which is really the true meaning of the word " office " as used in this section, regardless of any narrow technical construction.    The framers of this section undoubtedly had in mind the definition first laid down in the *King* v. *Dr. Burnell* (Carthew, 478), that " Every man is a public officer who hath any duty concerning the public, and he is not the less a public officer where his authority is confined to narrow limits, because it is the duty of his office, and the nature of that duty which makes him a public officer," which has been freely adopted as a general doctrine.   The following cases also state the same principle, but in varying language :

The term " *officer* " is sufficiently comprehensive to *include all persons in any public station or employment* conferred by government.   *Vaughn* v. *English*, 8 Cal. 41.   The terms "*office and public trust*" *have no technical meaning* distinct from their ordinary signification.   *An office is a public charge or employment*, and the *term* seems to *comprehend every charge or employment in which the public are interested.*   *People* v. *Kelly*, 77 N. Y. 508.   Citing *in re Wood*, 2 Cowen, note, page 30.

Whether we look into the dictionary of our language, the terms of politics, or the diction of common life, we find that *whoever has a public charge or employment*, or even a particular employment affecting the public *is said to hold or be in office. Rowland* v. *Mayor*, 83 N. Y. 376.   See *Foltz* v. *Kerlin*, 105 Ind. 221; *Henly* v. *Lyme*, 5 Bing. 107; *Attorney-General* v. *Drohan*, 169 Mass. 531; *People* v. *Brooklyn*, 77 N. Y. 503; *People* v. *Comptroller*, 20 Wend. 598; *State* v. *Wilson*, 29 Ohio St. 348; *Notes to McCormick* v. *Pratt*, 17 L. R. A. 243; *Queen* v. *Guardian*, 17 Q. B. *151 and note *a*.

And further, this legislation was expressly intended to pre-

vent by any possibility the giving of office to anyone but a voter. Being a recognition and appreciation of a well-known phrase paraphrased. " To the voters belong the offices." This sentiment has been somewhat more euphemistically expressed in *Off* v. *Smith* (14 Wis. 499) : " It is an acknowledged principle which lies at the very foundation, and the enforcement of which needs neither the aid of statutory nor constitutional enactments or restrictions that the government is instituted by the citizens for their liberty and protection, and that it is to be administered and its powers and functions exercised only by them or through their agency."

Resorting to the ordinance (Article 44, City Code, sections 7 and 8), under which the position of superintendent was first created, we find that the superintendent and assistant superintendent are both expressly required to be *"residents of the city of Baltimore."* There is absolutely nothing whatever to show, or indicate that the requirements of section 26 are not to apply to the position of Superintendent of Public Instruction, or that the Legislature or the Charter Commissioners intended any departure or exception from the provisions previously in force and identical with the present For, if this be not the meaning and intent of section 26, and the manner of the appointment, or the fixing of salary ; or not being required to take an oath, or to give bond, or for lack of a fixed term, be controlling factors, then, we would find that outside of the Mayor, and less than twenty others, excluding constables, there are probably none who can undisputably and properly be classed as municipal officials.

That the superintendent is an officer possessing all the essential characteristics of a public officer is evident ; for, 1. The office has been created by law. 2. The duties of the office are prescribed by law and not by contract. 3. The office and duties are permanent and continue though the incumbent be changed. 4. The duties are executive and relate to the proper administration of the public school system. 5. The salary of the office is paid out of the public treasury. 6. The law creating the office denominated it such, and the incumbent an

officer.   7.  The office and the duties thereof cannot be abolished or abrogated except by the creating power, *i. e.*, the Legislature.

The superintendent is certainly within the definition laid down by Mr. Mechem.   "A public office is the right, authority and duty, created and conferred by law, which for a given period either fixed by laws or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign function of the government to be exercised by him for the benefit of the public.   The individual so invested is a public officer."  *Mechem, Public Officers*, section 1.   Nor are his duties fixed by contract and he an employee ; for as Chief Justice Marshall said : Although an office is an employment, it does not follow that every employment is an office.   .   .   .   But if a *duty* be a *continuing one*, which is *defined by rules prescribed by the government*, and not by contract, which an *individual is appointed by government* to perform, who enters on the duty appertaining to his station, without any contract defining them, *if those duties continue, though the person be changed;* it seems difficult to distinguish *such a charge* or employment from *an office* or the *person* who performs the duties from *an officer.   United States* v. *Maurice*, 2 Brock. 103; and 17 L. R. A., notes on page 244.

The services of Superintendent of Instruction are performed under public authority and for the public good, but *in the exercise of standing laws*, which are considered as rules of action and guardians of right.  *Opinion of Judges of Me.*, 3 Greenleaf Ap. 481.   The *true test of public office* is that it is a parcel of the administration of government, civil or military, *or is itself created by the law-making power.   Eliason* v. *Coleman*, 86 N. C. 241.

It may be stated as universally true, that where an *employment or duty is a continuing one*, which is *defined by rules prescibed by law*, and not by contract, such a charge or employment *is an office*, and *the person* who performs it *is an officer*, *Shelby* v. *Alcorn*, 36 Miss. 289.   Approved in *State* v. *Wilson*, 29 Ohio St., 349.   See also *in re Oaths*, 20 Johns. 492; *in re*

*Hathaway,* 71 N. Y. 238; *United States* v. *Hartwell,* 6 Wall. 393; *State* v. *May,* 106 Mo. 488. The respondent [a *clerk* in office of Secretary of State] was *appointed by the government;* the *duties* which he is to perform concern the *public,* and he is *paid out* of the *public treasury;* he is *therefore clearly* a *public officer. Vaughn* v. *English,* 8 Cal. 39. The work in which the superintendent is engaged is done by him as a public officer. *Murphy* v. *Inhabitants of Needham* (Mass. Sup. Ct.), 57 N. E. Rep. 690. To adduce further cases would be a mere repetition, for we believe that these sufficiently point out the essential *indicia* of office, and, as we conclusively show, the superintendent possesses every necessary requisite thereof.

That the term " employee " is not applicable to the Superintendent of Public Instruction, and that the framers of the charter, in the creation of the Department of Education, never were in doubt as to his *status,* is abundantly evidenced by the fact that throughout sections 99–102, they refer to " office " and " officer " freely and advisedly, and to avoid any possibility of future confusion, they expressly say : Section 99. " All *officers,* secretaries, clerks, and employees, shall be appointed by said board, and may be removed by it at pleasure." And further on: (*id.*) " The salaries of all *officers,* teachers, secretaries, clerks and employees shall be fixed by said board."

What *officers* are referred to, if not the superintendents ? What other officers are there ? And, if they are not officers, and but mere employees, why this particularization of officers when the last word used fully covers their position ?

The majority of the framers of the charter were lawyers and well knew the effect of the use of the words officer and office as here applied ; and that such a use, as has often been adjudicated, is sufficient reason to determine the position an office and the holder an officer within the meaning of the law : For, as has been held : The fact that the place is designated, in the law providing for its creation, as an office, affords some reason for determining it to be such. *Mechem, Public Officers,* S. 10, and cases cited. The law creating the office denominates the Medical Superintendent an officer, and calls the place

an office. *State* v. *Wilson*, 29 Ohio St. 349. A City Super-
intendent of Streets is an officer required to give a bond, and
not a mere employee, where he is denominated an officer in
the ordinance referring to his office and duties, and public
duties, such as usually appertain to public office are devolved
upon him by statute and belong to the position, irrespective of
who may fill it. *State* v. *May*, 106 Mo. 488. The Superin-
tendent of a County Penitentiary is a public officer because so
denominated in the act establishing the office. *Porter* v. *Pills-
bury*, 11 How. Pr. 240.

An Inspector of Customs is an officer, and, being so called
in statute, puts the meaning beyond all controversy. *United
States* v. *Sears*, 1 Gallison, 221. Every office created either
by the Constitution or by the laws authorized by that instru-
ment is a public trust created for the public benefit. *Robb v.
Carter*, 65 Md. 333. An individual who has been appointed
or elected in the manner prescribed by law has a designation
or title given him by law, and exercises functions concerning
the public, assigned to him by law, must be regarded as a pub-
lic officer. *Bradford* v. *Justices*, 33 Ga. 332; *United States v.
Tinklepaugh*, 3 Blatch. 430; *People* agst. *Hayes*, 7 How. Pr.
R. 249. " The office of Inspector [of Masonry] being one
created by the act, when filled, the incumbent became more
than a mere ordinary employee or laborer." *Emmit* v. *Mayor*,
*etc.*, 128 N. Y. 120.

The following have been held to be Public Officers :

Medical Superintendent of an Insane Asylum. *State* v.
*Wilson*, 29 Ohio St. 347.

Superintendent of County Penitentiary. *Porter* v. *Pills-
bury*, 11 How. Pr. 240.

Superintendent of Streets. *State* v. *May*, 106 Mo. 488.

Superintendent of Schools. *Kimbrough* v. *Barnett*, 55 S.
W. Rep. 121.

Assistant Sanitary Inspector. *Smith* v. *Brooklyn*, 39 N. Y.
Sup. 990.

Clerk in the Treasury Department is an executive officer of
the government of the United States and within the second

section of the Act of May 8th, 1792—[  *  *  "the officers, judicial and executive, of the government of the United States"  *  *  ], and so not liable to be enrolled in the militia.  *Ex parte Smith*, 2 Cranch. Ct. Ct. , 693.

Clerk in the office of Assistant Treasurer at Boston.  He was appointed pursuant to law, and his compensation was fixed by law.  Vacating the office of his superior would not have affected the tenure of his place.  His duties were continuing and permanent, and such as his superior in office were to prescribe.  *United States* v. *Hartwell*, 6 Wall. 393.

Clerk in office of Secretary of State.  Had no fixed term ; removable at pleasure.  *Vaughn* v. *English*, 8 Cal. 39.

Assistant Clerk to the Board of Aldermen.  Because he performed some of the official functions of his principal.  *Collins* v. *Mayor*, 3 Hun. 680.  Distinguished in *Smith* v. *Mayor*, 67 Barber, 223.

Attendant upon Supreme Court.  His employment is one in which the public are interested ; its proper exercise requires capacity, diligence and attendance.  *Rowland* v. *Mayor*, 38 N. Y. 376.

Health Commissioner.  *In re Whiting*, 1 Edm. Select Cases, 498.

Morgue Keeper.  The position was an officer within the meaning of the authorities ; for the employment was in a position of public trust, not transient, nor occasional or accidental, and the salary fixed.  The position was certainly not a menial one, such as janitor or servant.  *People* v. *Keller*, 61 N. Y. Supp. 746.

Sailmaker.  Appointed by Secretary of the Navy, an officer.  2 *Cranch. C. Ct.*, 78.

All persons who by authority of law are intrusted with the receipt of moneys  *  *  *  by whatever name they may be designated in the law authorizing their appointment.  *Com.* v. *Evans*, 74 Pa. 124.

Trustees of University.  *People* v. *Bledsoe*, 68 N. C. 457.
Directors of Penitentiary.  *Id.*
Commissioners to supervise the building of an insane asylum.

Held not employees but officers. *People* v. *Comptroller,* 20 Wend. 595.

Road Commissioner. *People* agst. *Hayes,* 7 How. Pr. Rep., 249.

Trustees of State Library are public officers and their duties belong to the executive department of the goverment. *People* v. *Sanderson,* 30 Cal. 160.

Deputy State Treasurer. *State* v. *Brandt,* 41 Iowa, 593.

School Treasurer is an officer within the drescription "township or municipal officer." *Commissioner* v. *Morrisey,* 86 Pa. 416.

School Officers, Directors and Trustees are public officers. *McCoy* v. *Curtice,* 9 Wend. 17; *Ogden* v. *Raymond,* 22 Conn. 379; *Sanborn* v. *Neal,* 4 Minn. 126; *Kimbrough* v. *Barnett,* 55 S. W. Rep. 120; *Throop, Public Officers,* chap. 1, sec. 10; 17 L. R. A. Notes, 246–7–8.

*Oath* is not an indispensable criterion and the office may exist without it; for, as has been said, the oath is a mere incident and constitutes no part of the office. *Mechem, Public Officers,* sec. 6; *State* v. *Stanley,* 66 N. C. 59; *Howerton* v. *Tate,* 68 N. C. 547.

*Salary.*—Mere incident and constitutes no part of the office. *Mechem,* sec. 7, and cases cited; *Kimbrough* v. *Barnett,* 55 S. W. Rep. 120. May be increased or decreased when not restrained by law. *Wilson* v. *City of New York,* N. Y. Sup. Ct. 329.

*Duration* of term is not of the essence of public office. *Mechem,* sec. 8. · Officer may be removable at pleasure if law so provides. *Townsend* v. *Kurtz,* 83 Md. 345; *Vaughn* v. *English,* 8 Cal. 39.

*Appointment.*—Manner of, not material. *State* v. *Valle,* 41 Mo. 29; *Mechem,* sec. 12.

In the opinion of the learned Judge below, he said: "If, therefore, a comparison is made between the position of Superintendent of Instruction as created by the city charter, in which it is referred to as an office, and other positions, such

as have been before the Courts for construction, it is manifest that the great preponderance of opinion is in support of holding it a public office. If an exercise of a portion of the sovereign power, or the dignity and importance of the position to be adopted as a standard, there can be no question of the answer, if a bridge tender, an inspector of provisions or a medical superintendent of an insane asylum fall within the official class. Now it must be manifest that the Superintendent of Instruction must either be a public official for all purposes, or for none. He cannot be at one moment a public official so as to be relieved from personal responsibility to persons aggrieved, for the manner in which he shall perform his duties, involving an exercise of his discretion, and not an official for the purpose of continuing to hold the position. In the case of the *Commonwealth* v. *Morrissey*, 86 Pa. St. 416, the question arose in an analagous manner. The statutes there authorized the school boards of the several school districts to choose a president, secretary and treasurer, and the statute further specified the duties of the treasurer. An individual appointed as treasurer took certain of the funds, and the question presented was whether he was indictable as a public official, and the Court of Pennsylvania so held. Upon the general proposition therefore, the conclusion seems inevitable that a Superintendent of Public Instruction, created, designated and with duties assigned, as in the present case, is a public official, *i. e.*, an officer of the municipality."

BRISCOE, J., delivered the opinion of the Court:

The question in this case being one of public importance and being a matter affecting the Public School System of Baltimore City, we announced our decision in the case shortly after the argument in a *per curiam* order. We will now state the reasons for the conclusion reached by us at that time.

It is admitted that the record of the case presents but a single question of law for our consideration and that is, whether the Superintendent of Public Instruction in the City of Baltimore is a municipal official, within the meaning and intent of the city charter.

The twenty-sixth section of the charter (Acts of 1898, chapter 123), provides that no person shall at any time hold more than one office yielding pecuniary compensation under the Mayor and City Council of Baltimore.   All municipal officials, except females, shall be registered voters of the city of Baltimore.

The facts of the case are few and are not disputed.   Briefly stated they are as follows:  The Board of School Commissioners of Baltimore City, in pursuance of the power conferred on it by sec. 100 of the city charter, appointed Mr. James H. Van Sickle, Superintendent of Public Instruction, to take effect from the first day of July, 1900.   At the time of Mr. Van Sickle's appointment and of the filing of the bill in this case, he was not a registered voter of the city of Baltimore.   The bill is filed by a resident and taxpayer of Baltimore City, to enjoin the Mayor and City Council of Baltimore, the comptroller and the Board of School Commissioners, from paying his salary, for the reason that not being a registered voter of the city, he was not eligible to the position to which he had been apponted. The determination of the question depends upon an examination of the charter itself and the ascertainment of what persons the Legislature intended should be included in the use of the term "municipal official" in section 26 of chapter 123 of the Acts of 1898, (City Charter.)

It appears from an examination of the charter that the expression "municipal officials" is used to describe the heads of departments, heads of sub-departments and municipal officers not embraced in a department, and is not applicable to employees of these several departments.   By section 25 of the charter, the Mayor has the sole power of appointment of all heads of departments, heads of sub-departments, municipal officers, not embraced in a department, subject to confirmation by the Second Branch of the City Council, except where otherwise provided by the charter.   The City Comptroller and Surveyor are elected by the people, and the City Register and Public Printer are appointed by joint-convention of the two branches of the Council.   Secs. 33, 35, 205 and 208.

The appointment of the other city officials is provided by the 28th section which reads "that the heads of departments, heads of sub-departments, municipal officers not embraced in a department and all special commissions or boards shall have the sole power of appointment and removal at pleasure of all deputies, assistants, clerks and subordinate employees employed by them, unless otherwise provided for."

Now under the charter, sec. 100, the Superintendent of Public Instruction and his assistants are appointed by the Board of School Commissioners, the head of the Department of Education, and the qualification there prescribed is, "that the superintendents shall all be persons of education and experience in the management of schools, and they shall be not less than twenty-five years of age at the time of their appointment and shall discharge the duties herein prescribed and such other duties as the said board may direct."

It appears, then, from the aforegoing sections of the charter, that the Superintendent of Public Instruction is not appointed by the Mayor, or joint-convention or elected by the people, but is appointed by the Board of School Commissioners, the head of the Department of Education, and is an employee of this department of the city government.

JUDGE COOLEY, in the case of *Throop* v. *Langdon*, 40 Mich. 683, where it is held that the position of chief clerk in the office of the assessors of the city of Detroit was not an office, says, " The officer is distinguished from the employee in the greater importance, dignity and independence of his position ; in being required to take an official oath and perhaps to give an official bond ; in the liability to be called to account as a public offender for misfeasance in office, and usually, though not necessarily, in the tenure of his position.  In particular cases other distinctions will appear which are not general."  In *Olmstead* v. *Mayor, &c., of N. Y.*, 42 N. Y. Sp. Ct. Reports, 482, it was held that one who receives no certificate of appointment, takes no oath of office, has no term or tenure of office, discharges no duties, and exercises no powers depending directly on the authority of law, but simply performs such

duties as are required of him by the persons employing him and whose responsibility is limited to them, is not an officer and does not hold an office.   And in the recent case of *School Commissioners* v. *Goldsborough*, 90 Md. 207, we said : Civil officers are governmental agents, they are natural persons in whom a part of the State's sovereignty is vested or reposed, to be exercised by the individuals so entrusted with it for the public good.   The power to act for the State is confided to the person appointed to act.   It belongs to him upon assuming the office.   He is clothed with the authority which he exerts and the official acts done by him are done as his acts and not as the acts of a body corporate.

In the case now before us we find that the Superintendent of Public Instruction is not appointed by the Mayor, or elected by the people, or appointed by joint-convention of the two branches of the Council.   He takes no official oath, gives no official bond, has no commission issued to him, and has no fixed or definite tenure of office, but is appointed at the pleasure of the School Board.   It also appears from an examination of the charter, that all the executive power, relating to educational matters is vested in a department known as "the Department of Education" and this department is composed of the Board of School Commissioners.   The Superintendent of Public Instruction exercises no power except what is derived from and through this board.   He is simply, then, an employee or the agent of the School Board and not a municipal official, within the meaning of the charter.

Nor do we find anything in the duties to be performed by him which indicate an office and not an employment within the meaning of the 26th section of the charter.   In *State ex-Rel, Attorney General* v. *Vickers*, 58 Ohio State Reports, 730, it is held that a Superintendent of Schools is not an officer. *Butler* v. *Regents*, 32 Wis. 131; *United States* v. *Germaine*, 99 United States, 501.

We are, therefore, all of the opinion that section 26 of chapter 123 of the Acts of 1898, providing that all municipal officials, except females, shall be registered voters of the city of

Baltimore has no application to the position of Superintendent of Public Instruction.

It follows, then, that the order of the Court below, over-ruling the demurrer to the bill will be reversed, the demurrer sustained and the bill dismissed.

> *Order reversed, demurrer sustained and bill dismissed, with costs.*

(Decided *per curiam* October 12th, 1900. The foregoing opinion was filed February 8th, 1901.)