## STATE TAX COMMISSION
### *vs.*
### EMERSON C. HARRINGTON, Comptroller.

*State Senators*: *not eligible to any office created during his term; section 17 of Article 3 of the Constitution; general counsel to State Tax Commission; not a public officer.*
*Tax Commission*: *no right to appoint more than one general counsel. Statutes: interpretation.*

The State Tax Commission, under Chapter 841 of the Acts of 1914, may (but it is not required to) appoint a general counsel; the salary and tenure of employment are not fixed, no oath of office is required, no official bond is given, no commission issued, and the incumbent exercises no part of the State's sovereign power, but only such power as is derived from and through the State Tax Commission; and the general counsel of the commission is merely its employee or agent, and is not a public officer within the prohibition of section 17 of Article 3 of the Constitution.                    pp. 163-164

Chapter 841 of the Acts of 1914, in authorizing the State Tax Commission to appoint an attorney-at-law to be and act as its general counsel, gives it no power to appoint two attorneys to such post.                    pp. 166-167

Statutes should be interpreted according to the most natural and obvious import of their language, without resorting to subtle or forced construction, for the purpose of either limiting or extending their operation.                    p. 166

Only when the meaning of a statute is doubtful are courts authorized to indulge in conjecture as to the intention of the Legislature, or to look to consequences, in the construction of the law.                    p. 166

When the meaning of an Act is plain, the Act must be carried into effect according to its language, or the courts would be assuming legislative authority.                    p. 166

The words of an Act are first to be resorted to, and if these are plain, in their import, they are to be followed.                    p. 166

*Decided May 12th, 1915.*

Appeal from the Circuit Court for Anne Arundel County. (BRASHEARS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, URNER, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Isaac Lobe Straus* (with whom was *Charles C. Wallace* on the brief), for the appellant.

*Edgar Allan Poe,* the *Attorney General,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Anne Arundel County sustaining a demurrer to the appellant's petition and dismissing said petition. The prayer of the petition asks that a writ of mandamus be issued directed to the defendant, Emerson C. Harrington, Comptroller of the Treasury of the State of Maryland, commanding and requiring him to pay to the petitioner, the State Tax Commissioner, the sum of $1,750.00, consisting of two items each for the amount of $875.00, for the payment of the salaries of its general counsel, Edward M. Hammond and William W. Beck, for the period of the seven months from the first day of June, 1914.

The facts are undisputed. The State Tax Commission, created and established by Chapter 841 of the Acts of 1914, on or about the first day of June, 1914, under the alleged authority conferred upon it by the provisions of said Act, appointed the said Edward M. Hammond and William W. Beck, general counsel to said commission. The said Edward M. Hammond and William W. Beck are now and were at the time of the passage of said Act of 1914 and at the time of their appointment as general counsel to said commission, State senators from Howard and Kent Counties, respectively.

The demurrer to the petition assails the validity of the said appointment of Senators Hammond and Beck, 1st. Because,

as urged by the appellee, it is in violation of section 17 of Article 3 of the Constitution, which provides that "No senator or delegate, after qualifying as such, notwithstanding he may thereafter resign, shall during the whole period of time for which he was elected be eligible to any office which shall have been created, or the salary or profits of which shall have been increased, during such term;" and 2nd. Because the provision of said Act authorizing and empowering the commission to "appoint an attorney at law of the State of Maryland to be and act as the general counsel of said commission," conferred no power upon it to appoint more than one attorney as such general counsel, and that in appointing both Senators Hammond and Beck it exceeded the power so conferred upon it.

We will consider and decide these questions in the order in which they are presented.

We will, first, determine whether "general counsel" to the commission is an office within the meaning of said section 17 of Article 3 of the State Constitution. So far as we have been able to find, this Court has never defined nor has it been called upon to define what is or what is not an office within the meaning of this section of the Constitution. It has, however, determined in a number of cases what is and what is not an office within the meaning of other sections of the Constitution and certain statutes of the State. As it is easier to conceive the general requirements of an office than to express them with precision in a definition that shall be entirely faultless, the Courts have ordinarily, in the different cases considered by them, passed upon the facts of each case and reached their conclusion from such facts whether the essential requirements of an office were or were not found therein.

It will be found, however, by consulting the cases and the authorities, that the most general distinction of a public office is that it embraces the performance by the incumbent of a public function delegated to him as a part of the sovereignty of the State. Thus, in *Mechem Pub. Off.*, par. 4, it is said: "The most important characteristic which dis-

tinguishes an office from an employment or contract is that the creation and conferring of an office involve a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer." *Atty. General* v. *Jennings* (Ohio), 49 N. E. 404.

As was said by this Court in *School Commissioners* v. *Goldsborough,* 90 Md. 206: "The nature of the duties, the particular method in which they are to be performed, the end to be attained, the depository of the power conferred and the whole surroundings must be all considered when the question as to whether the position is a public office or not is to be solved." In that case the question presented was whether a school commissioner was an officer under section 15 of Article 2 of the Constitution, which provides that the Governor may remove, for incompetency or misconduct, all civil officers who receive appointment from the executive for a term of years. It was there held that a School Commissioner was not an officer under said section and Article of the Constitution, and JUDGE McSHERRY, speaking for the Court, said: "Civil Officers are governmental agents—they are natural persons— in whom a part of the State's sovereignty is vested or reposed, to be exercised by the individuals so entrusted with it for the public good. The power to act for the State is confided to the person appointed to act. It belongs to him upon assuming the office." And quoting from *Collins* v. *N. Y.,* 3 Hun. 680, the Court also said: "Probably the true test to distinguish officers from simple servants or employes is the obligation to take the oath prescribed by law."

In *Baltimore City* v. *Lyman,* 92 Md. 591, the question presented was whether the Superintendent of Public Instruction in the City of Baltimore is a *municipal official* within the meaning and intent of section 26 of the City Charter, which provides that "No person shall at any time

hold more than one office yielding pecuniary compensation under the Mayor and City Council of Baltimore. All municipal officials, except females, shall be registered voters of the City of Baltimore."

This Court in that case, quoting from JUDGE COOLEY in the case of *Throop* v. *Langdon,* 40 Mich. 683, said: "The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath and perhaps to give an official bond, in the liability to be called to account as a public offender for misfeasance in office, and usually, though not necessarily, in the tenure of his position. In particular cases other distinctions will appear which are not general." And in the discussion of that case this Court said, speaking through JUDGE BRISCOE "The Superintendent of Public Instruction is not appointed by the Mayor, or elected by the people, or appointed by joint-convention of the two branches of the Council. He takes no official oath, gives no official bond, has no commission issued to him, and has no fixed or definite tenure of office, but is appointed at the pleasure of the School Board. * * * And all executive power, relating to educational matters is vested in the department known as 'the Department of Education,' and this department is composed of the Board of School Commissioners. The Superintendent of Public Instruction exercises no power except what is derived from and through this board. He is simply, then, an employee or the agent of the School Board and not a municipal official, within the meaning of the Charter."

In the case of *Clark* v. *Harford Agri. & Breed. Asso.,* 118 Md. 608, the question was, are the members of the Racing Commission appointed under the Act of 1912, Chapter 132, persons "elected or appointed to any office of profit or trust under the Constitution or under the laws made pursuant thereto, and as such required to take and subscribe the oath required by the Constitution before they enter upon the duties of the position to which they were appointed." We there held that it was not an office of profit and trust and

that they were not required to take the oath prescribed by the Constitution, and in reching this conclusion we followed the reasoning in the cases of the *School Commissioners* v. *Goldsborough* and *Baltimore City* v. *Lyman, supra.*

In *Truitt* v. *Collins,* 122 Md. 526, in which the question here involved was last before us, after stating the law as we have here stated it and as laid down in the cases of *School Commissioners* v. *Goldsborough, Baltimore City* v. *Lyman, Clark* v. *Harford Agri. and Breed. Asso.,* and other cases therein mentioned, including the case of *Attorney-General* v. *Tillinghast,* 203 Mass. 539, reported in 17 Am. & Eng. Anno-Cases, 449, we held that the position of councilman in the municipal corporation of the Mayor and Council of Snow Hill was an office of profit within the meaning of Article 35 of the Declaration of Rights, and that it was an office of profit and trust within the meaning of section 6 of Article 1 of the Constitution. In reaching this conclusion, JUDGE BURKE, in speaking for the Court, said: "That it is an office in some sense can not be denied. It is spoken of in the Act as an office and it certainly is one of profit and trust. An examination of the charter will disclose that many of the powers of sovereignty were conferred upon the corporation. An enumeration of some of these sovereign powers of government will be found in section 16 of the charter. Section 6 of the charter declares that any person elected as Mayor or Councilman shall, before he enters upon the duties of his office, make oath before the Clerk of the Circuit Court for Worcester County, that he will diligently and faithfully, without favor, partiality or prejudice, perform the duties of such Mayor and Councilman." And it was "in view of the duties and the nature and extent of the powers conferred by the Act of 1894, Chapter 455, upon the Mayor and Council of Snow Hill and of the fact that the Mayor and Councilmen were required to take an oath of office before entering upon their duties" that we held that such position was an office of profit within the meaning of Article 35 of the Declaration

of Rights, and an office of profit and trust within the afore-said provision of the Constitution.

The meaning of the word "office" necessarily varies with the connection in which it is used, and to determine it correctly in a particular instance, regard must be had to the intention of the Constitution or statute, as the case may be, and the subject-matter in reference to which the term is used. It is true the meaning of the term "office" as given in the cases to which we have referred had reference to other sections of the Constitution and to certain statutes of the State, and not to the section of the Constitution now before us, and the meaning placed thereon in those cases was more or less dependent, as we have said, upon the connection in which said term was there used, but after a careful examination of this section, with the view of determining the meaning of the term "office," we are unable to find such a distinguishing difference in the connection in which it is there used, and the connection in which it is used in the cases to which we have referred, as to warrant us in giving to it a meaning different from that established by such cases.

The difficulty in extending its definition or in giving the term "office" a more comprehensive meaning is that we must at some point draw the line in determining what is and what is not an office within the meaning of this section of the Constitution. If it is to include employment and position, not office as defined in such cases, is it to mean all positions and employment incident to such legislation? We think not. And therefore the difficulty is in saying just where we are to draw the line as to what is and what is not meant by this term. Thus we are unable to find any better definition of the term or any better guide by which we should be governed than the essential requirements established by the cases and authorities above mentioned.

In view of said cases and authorities stating what is and what is not an office, the position of general counsel to the State Tax Commission is not, in our opinion, an office within the meaning of the constitutional provision here involved.

There is nothing in the case of *Robb* v. *Carter,* 65 Md. 321, in which the question whether the position of City Solicitor was an office was not especially presented, in conflict with the conclusion we have reached when the distinguishing facts of that case and the reasons upon which the decision rests are considered.

In the case before us the commission may, under the provisions of the statute, appoint general counsel, but it is not required to do so. The salary and tenure of the employment are not fixed, no oath of office is required, no official bond is given, no commission issued, and the incumbent exercises no sovereign power, but only such power as is derived from and through the State Tax Commission, and is simply an employee or agent of the commission.

We are now to consider the question whether the State Tax Commission in the appointment of two persons as general counsel to such commission acted within the power and authority conferred upon it by the aforesaid Act of 1914, Chapter 841.

The commission construed the provisions of the Act as authorizing and enabling it to appoint *two* attorneys-at-law to act as its general counsel, and the petition alleges that "in view of the number and variety of legal questions likely to arise with reference to different sorts of property and interests and under divers conditions in the various parts and sections of the State, it was in the judgment of said commission reasonable, proper and desirable to appoint as counsel to said commission two attorneys, one residing and practicing his profession mainly on the Eastern Shore, and the other residing and practicing his profession mainly on the Western Shore of the State of Maryland, so that thereby the said commission might have the advantage of consultation with and where it became necessary of representation in court by counsel conversant with the people, property, interests and conditions and the practice and customs of the courts in each of said natural and extensive geographical divisions of the State," and so appointed Edward M. Ham-

mond, of the Western Shore, and William W. Beck, of the Eastern Shore, as general counsel to said commission.

The petition further alleges that "on the 25th day of November, 1914, by a resolution or order of the State Tax Commission, duly appointed, the salary of the said counsel to the commission was fixed at $3,000.00 per year, beginning on the first day of June, 1914, and the Secretary of the commission was instructed to draw a check at the regular time for the payment of salaries for $1,500.00, payable to the order of said Messrs. Beck and Hammond, for six months' salary." And that on or about the 10th day of December, 1914, the State Tax Commission, pursuant to the aforesaid resolution, sent and delivered to the defendant, the Comptroller of the Treasury of the State of Maryland, "a requisition for salaries for the members of the commission and its secretary and its various employees, including two items for $875.00 each, with which to pay the salaries of its said counsel, Edward M. Hammond and William W. Beck, for the period of seven months ensuing the first day of June, 1914, the said counsel having entered upon their duties as aforesaid upon said first day of June, 1914, and having since said date continuously and satisfactorily rendered and performed all services, as counsel to the commission, which the commission requested or required of them," but that the said defendant "has declined and refused to honor the same in respect to said two items of $875.00 for the salary of said counsel to said commission, and * * * has declined and refused to pay to the said Tax Commission the amount due for the salaries of the said counsel to the commission as specified and called for by said requisition; * * * and that the said defendant * * * still refuses and declines to pay to the said commission the said sum or any sum whatsoever for the salary or compensation of said Messrs. Hammond and Beck as counsel to the State Tax Commission."

The language of the statute authorizing and empowering the commission to appoint general counsel is as follows: "The

commission may appoint an attorney at law of the State of Maryland to be and act as the general counsel of said commission, whose salary shall be fixed by said commission."

This language of the statute clearly authorizes and empowers the commission to fix the salary of the general counsel to the commission, which it, by its aforegoing resolution, fixed at three thousand dollars, and the result of appointing two rather than one attorney as general counsel to the commission may be conducive to its general efficiency; but does the language used authorize and enable the commission to appoint *two* attorneys as general counsel, even though the salary so fixed is divided between them?

"Statutes should be interpreted according to the most natural and obvious import of their language, without resorting to subtle or forced construction, for the purpose of either *limiting or extending* their operation." *Dwarris on Statutes,* 144.

"It is only in cases where the meaning of a statute is doubtful, that Courts are authorized to indulge in conjecture, as to the intention of the Legislature, or to look to consequences in the construction of the law."

"When the meaning is plain, the Act must be carried into effect according to its language, or the Courts would be assuming legislative authority." *Cearfoss* v. *State,* 42 Md. 407; *Scott* v. *Reid,* 10 Peters, 524.

The words of the Act are first to be resorted to, and if these are plain in their import they ought to be followed.

The language here is "The commission may appoint *an attorney at law* to be and act as general counsel." The effort is made by the appellant to extend the meaning of this language so as to enable the commission to appoint more than *one attorney* at law.

The meaning of the language of the statute does not to us admit of doubt, its meaning is clear and obvious. The commission is to appoint *an attorney* at law. And when we construe these words with the words that follow, "to be and act as general counsel of said commission," we find nothing in

these latter words indicating that more than *one* attorney was intended. Nor is there anything in any other part of the statute, when considered in connection with the language "an attorney at law to be and act as general counsel," that would warrant the construction that the authority of the commission was not confined to the appointment of *one* attorney.

The statute authorizes the appointment of an attorney to act as general counsel. The term "general counsel" as here used implies something more than an attorney who is employed from time to time for each separate occasion when advice of counsel is needed, and the amount of whose compensation is regulated and determined by the value of such special services so rendered. The general counsel, when once appointed, is to act generally as counsel to the commission in relation to all matters pertaining to it and concerning which his legal advice is sought by the commission, until his appointment is revoked. It is counsel of this character that the commission is authorized, under this provision of the statute, to appoint, and "whose *salary* shall be fixed by the commission," and under this provision of the statute the commission is, we think, confined to the appointment of one attorney.

In support of the contention of the appellant, our attention is directed to 36 *Cyc.*, page 1123, in which it is said, "When necessary to give effect to the legislative intent, words in the plural number will be construed to include the singular, and words importing the singular only will be applied to the plural of persons and things." This, no doubt, is a proper rule of construction, but it has no application in this case. for such a construction *is not necessary* in order to give effect to the legislative intent.

It is further urged by the appellant that their contention should be sustained by reason of the provision of Code (section 7 of Article 1), which provides that "The singular shall always include the plural, and *vice versa, except where such construction would be unreasonable.*"

In the recent case of *Shehan* v. *Tanenbaum, Son & Co.,* 121 Md. 286, we were called upon to construe section 14 of Article 1 of the Code. We there said: "The appellee relies upon the Rule of Interpretation as it appears in section 14, Article 1, of the Code (1912), providing that 'The word person shall include corporation, *unless such a construction would be unreasonable.*' But if such construction is without the clear meaning and intention of the Legislature it would be *unreasonable* to so include it. And although the rule is to be followed in some cases it cannot override the *clear intention* of the Legislature."

What we there said as to section 14 of Article 1 of the Code applies with equal force to section 7 of said article of the Code. There are, no doubt, many cases in which the rule should be applied in order to give effect to the legislative intent. In this case, however, such necessity does not exist, and if we were to apply the rule we would, in our opinion, be assuming legislative authority.

The requisition made upon the defendant, the Comptroller of the Treasury of Maryland, was for the aforesaid sums of money for seven months' salaries to be paid to Messrs. Hammond and Beck as its *general counsel,* and as we here hold that the commission was without authority to appoint *two* attorneys to be and act as its general counsel, the defendant, in our opinion, was right in refusing to honor the requisition and pay over the money to be applied for such purposes, and the Court below, in sustaining the demurrer to the petition and in dismissing the petition asking for a mandamus requiring him to pay said money, committed no error.

It follows, from what we have said, that the order of the Court below sustaining the demurrer and dismissing the petition will be affirmed.

*Order affirmed, with costs to the appellee.*