DAVID T. WILENTZ, ATTORNEY-GENERAL, EX REL. SOLO-
MON GOLAT, RELATOR, v. GEORGE H. STANGER, DE-
FENDANT.

DAVID T. WILENTZ, ATTORNEY-GENERAL, EX REL. SOLO-
MON GOLAT, RELATOR, v. HOWARD EASTWOOD, DE-
FENDANT.

Argued October 6, 1942—Decided December 30, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and
PORTER.

For the relator, *Samuel Kaufman*.

For the defendants, *David T. Wilentz*, Attorney-General
(*John F. Bruther*, Assistant Attorney-General, of counsel).

For the defendant Stanger, *Edward J. O'Mara*.

The opinion of the court was delivered by

PORTER, J.    These cases were argued together and for
convenience will be considered in the same way.

Leave was granted by this court for the filing of informa-
tion in the nature of *quo warranto* against these defendants
and the informations were duly filed in the name of the

Attorney-General on the relation of Solomon Golat, a taxpayer and consumer of milk, to both of which informations the defendants have demurred.

The real question raised by these demurrers is whether or not the defendants have vacated their seats in the Senate of New Jersey by reason of holding, as is alleged, public offices inconsistent and incompatible with the office of Senator.

The defendants, George H. Stanger and Howard Eastwood, hold the offices of Senator from the Counties of Cumberland and Burlington, respectively. Under the provisions of the Milk Control Act, *N. J. S. A.* 4:12A, &c., effective July 15th, 1941, the Director of Milk Control on January 1st, 1942, appointed Senator Stanger counsel to the Director of Milk Control at a stated salary and he has since served in that capacity. In January of 1942, the Milk Control Board held several public hearings on an appeal from an order of the director at which hearings Senator Eastwood appeared and acted as counsel to the board. It appears that he was not formally appointed as counsel to the board, that his duties were not defined and he received no compensation for his services.

For members of the legislature to occupy an office, or indeed, a position or an employment in another branch of the state government seems inconsistent and incompatible with their office in the legislative branch. However, that may be, we may only pass upon the question here presented, which is whether or not these defendants, or either of them, occupied an "office" under the statute as that term is defined in our cases. In this state we have no statutory definition of the term "office." If either defendant held a position or employment as distinguished from an "office," even though such post be deemed incompatible with the office of Senator, he may not be ousted under these proceedings.

That brings us to the controverted question of the status of these defendants as counsel respectively. Did the post held by either defendant attain the dignity or status of an office?

Relator relies on article III, paragraph 1, of the State Constitution which divides the powers of government into three departments; legislative, executive and judicial, and

prohibits any person from exercising powers in more than one department. He argues that the milk control department is an executive branch of the government and· that a legislator may not be an officer in that department and at the same time hold office as a legislator. He also relies on article IV, section 5, paragraph 3 of the Constitution which provides that any person possessing any office of profit under the government of the state shall not be entitled to a seat in the legislature. That therefore upon acceptance of the appointment as counsel to the director and to the Milk Control Board the defendants vacated their seats in the legislature. It will be observed that the relator predicates his entire argument upon the premise that the defendants hold offices as counsel to the director and to the board respectively and that these offices are· inconsistent and incompatible with the office ·of legislator.

The law is well settled that a person may not hold two offices at the same time which are incompatible. This was the rule at common law. The acceptance of the second office has the effect of the vacation of the first office so held. This rule is not disputed by the defendants so no citation of authority is necessary.

Under the Milk Control Act, *supra,* the board as such was given no authority to engage counsel. If it required counsel it could call upon the Attorney-General for such service under *N. J. S. A.* 52:17-2. It is clear that Senator Eastwood did not have, nor could he have had; any office under authority of the Milk Control Board. His services, whether given voluntarily or at the request of the board, gave him no official status whatever and were entirely gratuitous. We observe in passing that these defendants are represented by the Attorney-General. The normal role of the Attorney-General in matters of this kind when an information is filed in his name is to represent the sovereign power and his duty under our statute, *N. J. S. A.* 2:84-6, is to prove affirmatively all the facts averred or alleged in the information. The Attorney-General in this case appeared for the defendant Senators because the Senate by resolution requested him so to do.

As to Senator Stanger we also think that as counsel to the director he was not the holder of an office either. The Director of Milk Control appointed him counsel under the fourth section of the statute, *supra*, which provides that "the director *may* appoint a deputy director and counsel and may fix their compensation." (Italics ours.) We conclude that he was counsel to the director and not to the board. There is no action in this connection on the part of the board and the director has no authority under the statute to appoint counsel to the board; therefore it seems clear that the defendant Stanger was counsel to the director. It will be observed that the language of this section is merely permissive. Whether or not the director desired counsel of his own-choosing or whether he desired the service of the Attorney-General under *N. J. S. A.* 52:17-2, *supra*, was at his discretion. The counsel so appointed was entirely subject to the director, his duties were not defined by the statute, his tenure and the amount of his compensation were at the will of the director. Such incidents are not the indicia of office but of a less important service. Public office as distinguished from a position or an employment has been defined by the decisions of our courts.

An office is a place in a governmental system created or recognized by the law of the state which, either directly or by delegated authority, assigns to the incumbent thereof the continuous performance of certain permanent public duties. That definition was given by Mr. Justice Garrison in the case of *Fredericks* v. *Board of Health of West Hoboken,* 82 *N. J. L.* 200; 82 *Atl. Rep.* 528, and was followed in *McGrath* v. *Bayonne,* 85 *N. J. L.* 188; 89 *Atl. Rep.* 48 (a Court of Errors and Appeals decision), and *Civil Service Commission* v. *Rife,* 128 *N. J. L.* 503; 27 *Atl. Rep.* (2d) 214, and other cases.

A case closely analogous to the one at bar is *State Tax Commission* v. *Harrington,* 94 *Atl. Rep.* 537, decided by the Court of Appeals of Maryland. The question in that case was whether or not two counsel to the State Tax Commission, both of whom were State Senators when appointed, were the holders of an office and this worked a vacation of their offices as Senators under the state constitution which

is similar to ours in that regard. It was held that as counsel they held no office. The language of the court on page 539 follows:

"In the case before us the Commission may, under the provisions of the statute, appoint general counsel but it is not required to do so. The salary and tenure of the employment are not fixed; no oath of office is required; no official bond is given; no commission issued, and the incumbent exercises no sovereign power but only such power as is derived from and through the State Tax Commission and is simply an employee or agent of the Commission."

We conclude that neither. of the defendants was the holder of an office within the meaning of that term as adjudicated by the cases cited.

The demurrers are therefore sustained and the writs dismissed, with costs.