THE FROSTBURG BUILDING ASSOCIATION OF ALLEGANY COUNTY, and others *vs.* GEORGE STARK, and others.

INJUNCTION.

*Grounds for granting—Bill must show absolute necessity in order to protection from loss and injury—How the defendant should proceed where the averments in the bill are untrue.*

Although the general principles which govern Courts of equity in granting injunctions and in the appointment of receivers may be considered as well settled, yet, it is not easy to lay down a positive or unvarying rule applicable to all cases.

It is a matter resting somewhat in the discretion of the Court, to be determined upon all the facts and circumstances surrounding the case.

In the exercise of a jurisdiction so summary in its character and which deprives one of his property without a hearing upon a mere *ex parte* application, Courts cannot be too cautious lest an injury may be done the defendant, for which the subsequent restoration of the property would afford no adequate compensation.

When the averments in the bill are untrue, the defendant should file his answer, and then move to dissolve the injunction and discharge the receiver.

APPEAL from the Circuit Court for Allegany County, in Equity.

George Stark and others, shareholders in the Frostburg Building Association of Allegany County, filed in the Circuit Court of the said county their bill of complaint against the said building association, alleging that the directors had grossly and fraudulently mismanaged the affairs of the association and had wilfully and corruptly disregarded its charter and by-laws; that they had permitted the secretary and treasurer to embezzle large sums

of money, and had also allowed one of the directors to take from the funds, belonging to the association, a large sum of money without any security therefor, and although he held no stock for the same; that the directors had refused to take any steps to recover the amounts thus due by the defaulting officers; that gross mismanagement, fraud and negligence still continued, and that the association was hopelessly insolvent. The complainants filed with the bill certain exhibits corroborative of the aforesaid averments, and prayed the Court to pass an order appointing a receiver, and to grant an injunction against the aforesaid building association and the directors thereof, restraining them from further management of the affairs of the said association. Whereupon the Court passed an order appointing a receiver and granting an injunction as prayed.

Afterwards the defendants answered the bill of complaint, and appealed from the order of the Court appointing the receiver and granting the injunction.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ROBINSON, J.

*Wm. Brace* and *Benj. A. Richmond,* for appellant.

This is an appeal from an order granting an injunction and appointing a receiver to take charge of the affairs of the appellant. This order was passed by the Court below upon the filing of the bill of complaint, without waiting for the answer to come in. It is submitted that the case made by the bill, was not such as to justify such action.

An order of this kind should be passed only in cases of imminent danger and when the necessity is of the *most stringent character. Blondheim vs. Moore,* 11 *Md.,* 365; *Triebert vs. Burgess, et al.,* 11 *Md.,* 452; *Nusbaum vs. Stein,* 12 *Md.,* 315; *Haight vs. Burr,* 19 *Md.,* 130; *Voshell, &c. vs. Hynson,* 26 *Md.,* 84.

In this case the allegations upon which the order appealed from was passed, are in substance as follows, viz.,

1st. That the usual time for such associations to expire is seven years and nine months from their commencement, and that this one has been running that length of time, but still lacks about $24,000 of being able to pay out.

2nd. That R. R. Sanner, its secretary, has defaulted to the amount of $2,860.40 and Aden Clary, its treasurer, to the amount of $9,867.56, and that $1,300 had been improperly paid to A. J. Willison, one of its directors.

All other charges of fraud and mismanagement are entirely too general to be regarded, and point out no particular *facts.*

There is not a single allegation charging specific fraud upon the part of the present officers, for it is apparent from the face of the bill that there has been a change in the officers who are in default. The bill speaks of Thomas Hill as present secretary, and refers to Aden Clary as its *late* treasurer. Willison is not named as one of the present directors against whom process is prayed, and as a matter of fact, these parties are all out of office. The bill says that there has been fraud and mismanagement— but by whom? To quote the bill, "instead of conducting said business of said association as required by said charter and by-laws, *they* have fraudulently and grossly mismanaged the affairs of said association," &c. They— who? If the present managers, why not say so. Again "*said association* allowed its secretary, R. R. Sanner, to embezzle," &c. "And *said association* allowed its treasurer, Aden Clary, to default," &c. "And *they* allowed one A. S. Willison," &c. Now it is evident that a corporation could not be guilty of these acts, except through the agency of some one. Why not have charged these acts home to those against whom they are properly chargeable? Why not have given their names and offices? The only hypothesis upon which we can account for these

omissions is, that such a course would have revealed the fact that since the acts complained of, other officers and directors have been elected who are managing the affairs of the corporation honestly and fairly. The bill attempts to conceal this change of officers, but nevertheless bears evidence upon its face, that such change has taken place. The only charge attempted to be made against the present management is, the general statement "that said gross mismanagement, fraud and negligence still continue by said association in the management of its affairs." Even here is an evident attempt to escape making a charge of specific fraud against the present officers, and without such specific charge the injunction ought not to have been granted against such officers.

The allegations of the bill in regard to the time necessary to pay out the shares are false, from the face of the bill. The bill states that it would require nearly two years to pay out the unredeemed shares. It also states that the whole number of shares are 646, and "Exhibit C" shows that 551 had been redeemed before the filing of the bill, leaving 93 shares to be redeemed, to wind up the association. "Exhibit C" also shows that the arrearages on mortgages for redeemed shares was $5,927. This sum deducted from $24,180, (the amount required to redeem 93 shares,) would leave $18,253 to be raised by dues and interest, from the filing of the bill. Each share pays fifty cents per week, and each redeemed share thirty cents per week additional for interest, hence the 646 shares would bring $323, and the 551 redeemed shares, $165.30 additional, each week, making the total weekly receipts $488. This would require but 37 weeks payments to raise $18,253, instead of two years, as sworn to in the bill.

There is an evident want of "fullness and candor" in the statement of the complainants' case, and for this reason alone, if for no other, the relief prayed should have

been refused until both sides were heard. *Sprigg vs. Western Tel. Co.*, 46 *Md.*, 77.

In a case of this kind, there could be no such imminent danger to the assets of the concern as to justify the appointment of a receiver, without notice. These assets were not goods and chattels in possession, which could be disposed of, sold or made way with, lost or destroyed, as was the case in Blondheim and Moore. The assets here consist only of the weekly dues and interest, amounting to a few hundred dollars weekly.

The most that could be lost by waiting for the answers would be the dues for a week or two. The complainants were not to be, and could not be, called upon to pay their mortgages up in full, and the weekly dues were a smaller matter, but even these could have been reduced to a still smaller amount by their refusal to pay dues whilst the matter was pending. It required a default for three months to forfeit the mortgages, and the only consequence of such refusal would have been a few cents in fines.

But the bill shows no reason to apprehend danger from a delay of a few weeks. All the specific acts of fraud alleged were things done and completed, and the defaulting officers were no longer acting.

The secretary, it is true, is alleged to be acting without a bond, but his receipts, as we have shown, could be but a few hundred dollars weekly, and there is no charge that he was misapplying these receipts, or that he is insolvent.

He was not only liable to the association in a civil action, but also to criminal prosecution, if he did not account for his receipts.

But taking the bill as a whole, there is nothing in it to show that there existed the slightest reason to fear further defalcations, or further loss to result from the wrongful acts of the association or its officers. The losses which

had already occurred were discovered by the committee some two months before the filing of the bill; and it is reasonable to presume that they had long been known to the complainants and other stockholders—having resulted in a change of officers—and surely after a voluntary delay like this, no great danger could have been apprehended during the few days which would have been necessary, in order to give the defendants notice of the bill.

There is no allegation anywhere in the bill, except in the prayers, that McMillan, Warne, Hill, and the other defendants were officers of the association; and without such allegation in the *body* of the bill, it was error to issue an injunction as against them.

In the prayer for relief by way of injunction, the names of McMillan and the others do not appear, but are intended to be embraced in the general designation, "the association and its officers," and in the prayer for process, an injunction is asked against all the defendants by name, and so granted. We submit that this is error, their names should have been set out in the prayer for relief, particularly in view of the want of an allegation in the bill to show who were officers.

*W. H. Price* and *A. H. Blackistone,* for the appellee.

The appeal in this case was taken from an order granting an injunction and appointing a receiver to take charge of the business of appellant.

The order was passed upon the filing of the bill of complaint by the appellees; after the granting of the injunction and the appointment of the receiver, the appellants appeared, filed their answer and prayed an appeal from the order of the Circuit Court; the only question before this Court of which it can take notice, is the case made by the bill. The answer is not before the Court, as the appellants' attorneys concede, under the authority of 11 *Md.,* 374; 19 *Md.,* 130; 22 *Md.,* 447.

Then we have but one thing to look after,—was there such a case made by the bill of complaint as would authorize the Court to appoint receivers to take charge of appellants' affairs? We do not think there is any doubt of it, or can be, after reading the bill.

It claims that complainants are the holders of a large amount of stock, and that the usual time for the same character of associations to expire had arrived, but there was a large deficiency in the funds of the same; that it then owed over twenty-four thousand dollars to its stockholders, whereas it should owe nothing.

They charge that large sums of money had been embezzled by its officers, and that its then officers had made no effort to recover the same. That the gross mismanagement still continued under its then officers, and cites the fact that money was ordered to be paid over to its late treasurer; that it was then acting and doing business without a treasurer and without a bonded secretary; now the secretary was the proper person to collect the dues, &c.: he had given no bond and yet was collecting money. It won't do to say the loss would have been small; if there was imminent danger of losing one dollar, the complainants were entitled to instant relief, just as much so as if it had been thousands.

Then they charge that its then managers were fraudulently refusing to take any action to recover the stolen money, but on the contrary were allowing the defaulting officers to make way with their property and thus rob the complainants entirely.

Then complainants were in imminent danger of being oppressed, to have their property sacrificed without due effort to collect the money already due to appellants; taking the whole bill through, we can hardly conceive of a stronger case for the interposition of a Court of equity by a peremptory order, than the one made by this bill; the charges of the bill are clear and specific, and as each case

must stand by itself, we are.willing to leave this case on its merits.

The appellees have stated fairly and without equivocation the facts they rely on; the books, papers, &c., were in the hands of appellants, and the appellees could therefore not give the exact figures, but they have stated a case that for boldness, gross fraud and rascality on the part of its managers, has hardly an equal in the numerous fraudulently managed corporations. We claim the order was rightly passed and should be affirmed by this Court.

ROBINSON, J., delivered the opinion of the Court.

Although the general principles which govern Courts of equity, in granting injunctions and in the appointment of receivers may be considered well settled, yet it is not easy to lay down a positive or unvarying rule applicable to all cases. After all, it is a matter resting somewhat in the discretion of the Court, to be determined upon all the facts and circumstances surrounding the case. In the exercise however, of a jurisdiction so summary in its character, and which deprives one of his property without a hearing upon a mere *ex parte* application, Courts cannot be too cautious, otherwise an injury may be done the defendant in many cases, for which the subsequent restoration of the property may afford no adequate compensation. If it be practicable, the defendant ought to have an opportunity to put in his answer, and if this cannot be done, it is the duty of the complainant, not only to show that he has an interest in the property in dispute, but that the interference of the Court *is absolutely necessary* to preserve it from loss and injury. *Blondheim vs. Moore,* 11 *Md.,* 365; *Triebert vs. Burgess,* 11 *Md.,* 452; *Nusbaum vs. Stein,* 12 *Md.,* 315; *Owen vs. Homan,* 4 *House Lords,* 1032, *per* Lord CRANWORTH.

Now in this case the application is made on the part of shareholders in a building association, and they allege

that the directors have *grossly* and *fraudulently* misman-
aged the affairs of the association and have wilfully and
corruptly disregarded its charter and by-laws, that they have
permitted the secretary to embezzle the sum of two thousand
eight hundred and sixty dollars and forty cents, and the
treasurer the sum of nine thousand eight hundred and
sixty-seven dollars and fifty-six cents, and have further
allowed one of the directors to take from the funds be-
longing to the association, the sum of one thousand and
three hundred dollars, and this too without any security
and although he held no stock for the same.

The bill also charges, that the directors have refused to
take any steps to recover the amount thus due by the
defaulting officers, that they are now doing business with-
out a treasurer and without a bonded secretary, that the
said gross mismanagement, fraud and negligence still con-
tinues; and that although the association has been in
existence long enough to have redeemed all its shares, it
is now twenty-four thousand and seven hundred dollars in
debt and *is hopelessly insolvent*.

The complainants also file with the bill and as an
exhibit thereto, the report of a committee appointed by the
stockholders to investigate the affairs of the association,
from which it appears they were unable to find any record
of the minutes of the proceedings of the board of direc-
tors, and the committee were obliged to procure all the
small due books held by the members, and from them
ascertain as best they could, the business transactions and
financial condition of the association.    The report of the
committee fully sustains the specific allegations in regard
to the defalcations of the secretary and treasurer, and also
the charges of mismanagement and entire disregard of the
by-laws on the part of the directors.

Such then being the case presented by the bill and
proof, we think the Court was justified in granting an
injunction and in appointing a receiver to take charge of

the assets and property of the association. If the averments in the bill were untrue, the appellants should have filed their answer, and then made a motion to dissolve the injunction and discharge the receiver.

*Order affirmed.*

(Decided December 20th, 1877.)