## STEEL'S DEPARTMENT STORES, INC.,

*vs.*

## RUTH A. BUCKINGHAM ET AL.

*Corporate Receiver—Ex Parte Appointment—Averments of Bill.*

A receiver should not be appointed on an *ex parte* application except upon the clearest and most satisfactory showing that only by such appointment can the interests of justice be served.                                                    p. 684

Admissions of fact made by counsel, if not incorporated in the record, cannot be considered in the Court of Appeals.  p. 685

That plaintiffs were induced to buy stock in defendant corporation upon representations by defendant's agents, and that plaintiffs, at the time of filing their bill for the appointment of a receiver for defendant, believed these representations to be false, does not justify such appointment, no facts appearing to show that the representations were false or fraudulent.    p. 685

That the Attorney General had addressed to the L. R. Steel Service Corporation a questionnaire as to its financial condition, which it had failed to answer, that such corporation had returned to one person the sum paid by him for stock therein, and that it was closing its Baltimore store, did not justify the appointment of a receiver for Steel Department Stores, Inc., in the absence of evidence showing some relation between the two corporations.                                            p. 686

In a proceeding for the appointment of a receiver for defendant corporation, that it is insolvent, that it has defrauded plaintiffs, or that its assets are in danger, is entirely immaterial, unless the existence of such facts is shown by the bill.    p. 686

Where the interest of plaintiffs in the subject matter of the suit depends upon their ownership of certain shares of stock, evidenced by certificates regularly issued to them, these certificates, as being the best evidence of such interest, should be exhibited with the bill.                                         p. 687

*Decided June 26th, 1923.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Bill by Ruth A. Buckingham and Mary L. Buckingham against Steel's Department Stores, Inc. From an order appointing a receiver as prayed, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and OFFUTT, JJ.

*J. Kemp Bartlett, Jr.,* with whom were *Bartlett, Poe & Claggett* on the brief, for the appellant.

*Wm. Purnell Hall,* with whom was *J. Purdon Wright* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from an *ex parte* order of the Circuit Court of Baltimore City, appointing Mr. W. Purnell Hall a receiver to take charge of the business and assets of Steel's Department Stores, Inc.

The order was based upon the averments of the bill of complaint and the affidavit thereto. The only question presented by the record, therefore, is whether the allegations of the bill are sufficient to justify the passage of the order appealed from.

The bill in effect says that the appellant is a Maryland corporation, having a resident agent in Baltimore City, and that upon representations made by its agents the appellees bought two shares of its capital stock, for which they paid two hundred dollars, and with which they received one share of the common stock of the Steel's Department Stores Holding Company. It further states:

> "That the agents and manager in Baltimore represented to the public and specially to your complainants that the L. R. Steel Service Corporation was a large and flourishing concern and controlled the fol-

lowing companies: L. R. Steel Service Corporation
of New York, L. R. Steel Company, Ltd., Steel Realty
Development Corporation, Mary Lincoln Candy Com-
pany, Incorporated, Federal Stores Company, L. R.
Steel Service Corporation, Limited, Charles Weegh-
man Corporation (chain of lunch rooms), L. R. Steel
**Company, Ltd. (5 cents to $1 and 5 cents to $10**
stores, operating in Canada); Steel Lingerie, Waist
and Hat Shops (operating in Canada), 'Jane Drew'
Candy Shop (to be operated in Canada), Steel Realty
Developing Corporation, Limited, Moore Haven Sugar
Corporation, and F. E. Nelson Company, and that
stock has been sold to the Baltimore public in all or
more of said companies.    * * *    The complainants
purchased the above mentioned stock, and as an in-
ducement and argument put forward by said Ander-
son and Payton why said stock was a good invest-
ment for these complainants they represented that
they had 10,000 stockholders in said store company,
which statements your complainants relied upon and
believed, and that as soon as the store was opened
they would have those 10,000 stockholders as cus-
tomers for the store, because all the stockholders, being
interested financially, would patronize their own store,
and had it not been for these representations the peti-
tioners would not have invested in said stock, which
representations your petitioners now believe to have
been false and at the time they were made said agents
and manager knew they were false.

"That your petitioners are informed and believe
that the Attorney General of the State of Maryland,
acting in pursuance to authority of law, sent to the
L. R. Steel Service Corporation a questionnaire for
the purpose of ascertaining the financial condition of
all the companies for which said Steel Company was
selling stock, which included the Maryland Corpora-
tion, to which they have never made answer, but con-
tented themselves with advising the Attorney General

that they would not sell or offer for sale any more stock in the State of Maryland.

"That your complainants are advised by their solicitor that one thousand dollars has recently been returned by said Steel Corporation after demand was made, because certain stock was sold to one of their customers by false and fraudulent representations of one of their agents.

"That recently insistent demands have been made for the return of money, for the reasons above stated, and in the face of the demands these complainants received on the 20th day of February, 1923, a notice from the L. R. Steel Service Corporation that for what they term 'economical policy,' the Baltimore office would be closed.

"That the Maryland corporation, so far as investigation shows, has no bank account in this State and no banking connections; that there are no officers or directors within the State from whom any information can be obtained; that the resident agent, upon being interrogated, did not know anything of the company other than that he was the resident agent; that there are no stores or store operated in this State by said Maryland corporation, and your petitioners believe there never will be any.

"That many of the sales of stock in the Maryland corporation were made on the partial payment plan; that your complainants are informed and believe that many thousands of dollars are yet to be paid in on said contracts and that in closing the office here in Baltimore, directions were given to forward all future payments to the office of L. R. Steel Service Corporation in Buffalo, New York."

Reference is made in the bill to a notice (not, however, from the appellant) to the appellees, that the Baltimore office would be closed, and a copy of such a notice appeared in the record. There is nothing in the bill or in the record, how-

ever, to indicate that it was intended to be or was filed as an exhibit, but in the absence of objection we will so treat it.

The peremptory and *ex parte* appointment of a receiver may be one of the harshest and most drastic of legal remedies. To deprive an unwilling person of a valuable business or property, and place it in the hands of a stranger, may result in irreparable loss and irremediable wrong. For those reasons no principle is more firmly imbedded in our law than that courts ought not to appoint receivers upon *ex parte* application except upon the clearest and most satisfactory showing that only by such appointment can the interests of justice be served. The general rule is thus stated in the fourth edition of *High on Receivers,* page 123: "In other words, if the emergency shown is such as to render it essential to justice that a receiver should be immediately appointed, it may be done before answer, since to delay the relief might entirely defeat the object sought by the application * * *. While the practice of appointing receivers before answer, in cases of emergency, is thus shown to be well established and generally followed by courts of equity in this country, yet the grounds which will induce the court to interfere at this stage of a cause must be very strong, and there must be clear proof of fraud, or of immediate danger to the property unless it is taken into the custody of the court. And when there are no allegations of defendant's insolvency, or of danger to the property and interests concerned, the relief will not be granted before answer." And in 23 *R. C. L.* page 38, it is said: "The general rule that notice must be given to the adverse party of an application for the appointment of a receiver is not inflexible, but yields to an imperative necessity for an *ex parte* appointment to prevent irreparable loss. Thus it has frequently been held that notice might be dispensed with in cases where it appeared that the defendant was insolvent and was disposing of his property with the intention of placing it beyond the reach of his creditors. It must, however, clearly appear that the danger is real and that the delay inci-

dent to the giving of notice will result in an irreparable injury, and the defendant should be afforded a speedy hearing on a motion to vacate the order." And in *Miller's Equity,* sec. 630, it is said: "There are few powers exercised by a court of chancery which require greater caution than the power of appointing receivers. It is a discretionary power, and a delicate one, to be exercised with great circumspection, and only under special and peculiar circumstances requiring summary relief. It is a high power, never exercised where it is likely to produce irreparable injustice or injury to private rights, or where there exists any other safe or expedient remedy. In the exercise of a jurisdiction so summary in its character, and which deprives one of his property without a hearing, upon a mere *ex parte* application, courts cannot be too cautious, otherwise an injury may be done the defendant in many cases, for which the subsequent restoration of the property may afford no adequate compensation." These general principles are illustrated and applied in a number of cases decided by this Court, which are collected in the notes to sections 629, 630 and 633 of *Miller's Equity Procedure.*

In applying these principles in the matter before us, we will assume the truth of all well pleaded averments in the bill, but we are confined to those averments. Some reference was made at the argument to admissions of fact made by counsel but not incorporated in the record. Obviously such admissions cannot be considered in this Court, for we must look and can only look to the record and to the record alone for the facts.

An analysis of the allegations of the bill of complaint discloses only these material and essential facts. The appellees were induced to buy two shares of the preferred stock of the appellant upon certain representations by appellant's agents. It is not charged in the bill, nor are there any facts in the record from which we can infer, that these representations were false or fraudulent, for the statement made in the bill that appellees believed them to be false means noth-

ing, because it is not supported by facts showing some ground for such a belief. *Hubbard* v. *Hubbard,* 14 Md. 356. The Attorney General of the State addressed a questionnaire to the L. R. Steel Service Corporation asking for a report on its financial condition and that of its subsidiary company, which it failed to give; and it returned one thousand dollars to a dissatisfied stockholder for stock sold through the fraud of its agents, but there is nothing in the record to show any relation between "Steel's Department Stores, Inc." and the "L. R. Steel Service Corporation," and no inference detrimental to the appellees can be drawn from the acts and conduct of any other corporation with which it is not shown to be in any way connected and over which it is not shown to have any control. The L. R. Steel Service Corporation, on February 20th, 1923, notified the complainants that its Baltimore office would be closed, but that fact, if true, did not affect the appellees, because they had no stock in the "service" company, and there is nothing in the bill to show that the "Department Stores, Inc.," in which they did hold stock, ever had had a store in Baltimore. Clearly such allegations, and there are no others in the bill which add anything to their force, form no ground for the appointment of receivers. In fine, upon a careful examination of the bill we are unable to discover a single fact from which it could be inferred that the appellant is insolvent, that it has defrauded the appellees, or that its assets are in danger. Whether such facts do or do not exist is entirely immaterial unless their existence is shown by the bill. It may be true, as stated in the argument of counsel, that the appellant is but a part of a single fraudulent device consisting of many other parts created for the purpose of defrauding the public, but, if that is a fact, it should have been set forth in the bill, but since it is not set forth there and does not appear in the record, it cannot be considered by this Court in dealing with the question before us. The bill, therefore, in our opinion, fails to disclose any grounds justifying the appointment of a receiver.

The order ought not to have been passed for another reason. The interest of the appellees in the subject matter of the suit depended upon their ownership of certain shares of stock, evidenced by certificates regularly issued to them. These certificates, as the best evidence of the appellees' interest in the subject matter of the suit, should have been exhibited with the bill (*Haight* v. *Burr,* 19 Md. 130; *Nusbaum* v. *Stein,* 12 Md. 315), but were neither filed nor any explanation made of the appellees' failure to file them.

For the reasons given above the order appealed from will be reversed and the cause remanded, in order that such further proceedings may be had therein by way of amendment or otherwise as may be requisite and proper.

> *Order reversed, and cause remanded for further*
> *proceedings, with costs to the appellant.*