# FIRST CONTINENTAL SAVINGS AND LOAN ASSOCIATION, INC. *v.* DIRECTOR, STATE DEPARTMENT OF ASSESSMENTS AND TAXATION ET AL.

[No. 344, September Term, 1961.]

*Decided July 9, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ., and NILES, J., Chief Judge of the Supreme Bench of Baltimore City, specially assigned.

*M. William Adelson* and *Eugene P. Smith,* with whom was *Douglas N. Sharretts* on the brief, for the appellant.

*Joseph S. Kaufman, Deputy Attorney General,* and *James P. Garland, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Thomas W. Jamison, III, Assistant Attorney General,* on the brief, for the appellees.

Brief of *amici curiae* filed by *Richard W. Case, Joseph M. Roulhac* and *Smith, Somerville & Case* for Maryland Savings and Loan League, Inc., and Maryland League of Building, Savings and Loan Associations, Inc.

HAMMOND, J., delivered the opinion of the Court.

The attack in this appeal is on the validity of the *ex parte* appointment of a receiver for the First Continental Savings and Loan Association, Inc., which was granted on the application of Albert Ward, Director of the State Department of Assessments and Taxation, and of the State of Maryland, under the provisions of Sec. 160L of Ch. 1 of the Laws of the Special Session of 1961. In addition to the contention that there was no justification for such drastic action, which has almost always been made in such cases, sometimes successfully [1] and at other times unavailingly,[2] the Association argues

---

1. State Founders, Inc. v. Oliver, 165 Md. 360, 381-384; Steel's Dept. Stores v. Buckingham, 143 Md. 680, 684-686; Baltimore Skate Mfg. Co. v. Randall, 112 Md. 411, 414-415; Knighton v. Young, 22 Md. 359, 372; Blondheim v. Moore, 11 Md. 365, 374-375.

2. So. Md. Agri. Ass'n v. Magruder, 198 Md. 274, 277-284; Hagerstown Furniture Co. v. Baker, 155 Md. 549, 558-563; Shannon v. Wright, 60 Md. 520, 522-523; Frostburg Build. Ass'n v. Stark, 47 Md. 338, 345-347; Haight v. Burr, 19 Md. 130, 134-136; Rosenberg v. Moore, 11 Md. 376, 380-381.

that Ch. 1 was invalid or ineffective under Art. XVI of the Maryland Constitution, and that it was denied due process of law because its motion to dismiss or stay the petition for a receiver and its demurrer challenging the legal sufficiency of the petition were not considered by the lower court before the appointment.

Consideration of the background of the passage of Ch. 1 is necessary for proper determination of the argument as to the validity of that law. A Commission appointed by the Governor to consider regulation of savings and loan associations embodied the recommendations of its report in a bill which was presented at the 1961 session of the General Assembly. After making amendments, the Legislature enacted the bill proposed by the Commission as Ch. 205 of the Laws of 1961. The Act established comprehensive regulation of savings and loan companies and delegated broad policy making powers to a Board of Building, Savings and Loan Association Commissioners. The administration of the Act was confided to a newly created Department of Building, Savings and Loan Associations, the head of which was designated as Director. The Act dealt with reserve qualifications, dividends, withdrawals, investments, reports and examinations of building and loan organizations, and imposed specific restrictions on the multistock form of doing business, the investing in second mortgages and land instalment contracts and promotion campaigns for deposits. Soon after the passage of the Act, petitions were circulated seeking its referral to the voters at the election in November 1962, under the provisions of Art. XVI of the Constitution of Maryland. Sufficient signatures were procured to effect suspension of the Act until that election.

The Governor, feeling that the suspension of Ch. 205 created an emergency, in light of the prevailing urgent need to regulate and correct existing evils and unsound practices in the field, called a special session of the Legislature. On June 9, 1961, the Senators and Delegates passed, and on June 12, 1961, the Governor approved, a bill identical in substance with Ch. 205 except that administration of the law was vested in the State Department of Assessments and Taxation and its Director; the law was passed by three-fifths of the mem-

bers of each House and was declared to be an emergency law and to take effect from the date of its passage.

Chapter 1 of the Laws of the Special Session of 1961, the emergency act, further declared that it was the intention of the General Assembly to preserve the right of referendum provided by the Constitution "both as to this Act and as to Chapter 205" [3] and its further intention "to meet the emergency that has arisen as a result of the suspension of the effect of the said Chapter 205 pending referral thereof to the voters of Maryland"; that therefore Chapter 1 should not be construed as repealing, by implication or otherwise, Chapter 205; and that Chapter 1 "shall terminate at such time as the said Chapter 205 shall become effective." There was a further provision that "such rules, regulations, orders and decisions as may be made, promulgated or otherwise handed down by the State Department of Assessments and Taxation or its Director pursuant to the authority of this Act" shall remain in full force and effect until changed or repealed "pursuant to the authority of said Chapter 205."

On June 20, 1961, the Attorney General of Maryland ruled that there had been an insufficient number of valid signatures seeking referral of Chapter 205 presented to the Secretary of State to meet the requirements of Art. XVI of the Maryland Constitution for submission of the law for the approval or rejection of the voters.

A number of reasons are advanced in support of the contention that Ch. 1 was ineffective. It is argued that because the Attorney. General had formally advised the Secretary of State that Ch. 205 had not been validly referred, it was not suspended but was in effect and Ch. 1, by its own terms, was

---

3. Ch. 1 of the Special Session, not being an appropriations measure, was subject to referendum. Art. XVI, Sec. 2, provides, in part, "An emergency law shall remain in force notwithstanding such petition, but shall stand repealed thirty days after having been rejected by a majority of the qualified electors voting thereon." Thus those opposing Ch. 1 had until June 1, 1962, at least, since Sec. 2 of Art. XVI gives until the first day of June next following the session at which the law sought to be referred was passed. In fact, no petitions for referral of Ch. 1 were filed.

not. The conclusion urged does not follow. Section 2 of Art. XVI of the Constitution says in precise terms that if the requisite number of signatures seeking a referendum be duly filed with the Secretary of State the law or part of law involved "shall be referred by the Secretary of State to such vote, and shall not become a law or take effect until thirty days after its approval by a majority of the electors voting thereon at the next ensuing election * * *." Section 1 (b) of Art. XVI states, "The provisions of this Article shall be self-executing * * *." The period of suspension, which begins at the time specified by Art. XVI (following the filing of the requisite number of sworn-to signatures), ends either when the voters approve the law or when a court holds that suspension has not been effected for want of proper compliance with Art. XVI. *Hammond v. Lancaster,* 194 Md. 462; *Sun Cab Co. v. Cloud,* 162 Md. 419. The views of the Attorney General as to compliance with the requirements of Art. XVI are advisory only and cannot operate to terminate the suspension of a referred law any more than his opinion that a law is unconstitutional makes that law inoperative. Only a court has the power to declare a statute invalid because it does not comply with constitutional requirements, and only a court can effectively hold that an attempted referral is fatally faulty.

The legislative intent in Ch. 1 is clear. That Act was to remain in force until Ch. 205 came into effect either by reason of approval of the voters at the polls or because a court earlier held it to be in effect.

It is argued further that Ch. 1 is void as "a mere subterfuge to nullify the people's power of referendum." The premise is that since the people reserved the right in the Constitution to suspend a law, once they have exercised the right, the power of the Legislature to deal with the subject matter of the referred law is likewise suspended until the law is voted on. In some States it has been so held.[4] In

---

4. In re Opinion of the Justices, 174 A. 853 (Me.); State v. Becker, 240 S. W. 229 (Mo.); In re Referendum Petition No. 1, 220 P. 2d 454 (Okla.). See also Jackson v. Denver Producing & Refining Co., 96 F. 2d 457 (10th Cir.) (applying Oklahoma law).

other States it has been decided that a legislative body may deal with the subject of a law referred but not yet voted on, particularly if it does so by means of an emergency measure.[5]

The powers of the Maryland Legislature are plenary except as restrained or confined by the Federal or State Constitutions. *Maryland Committee for Fair Representation v. Tawes,* 228 Md. 412. There is no provision in the Maryland Constitution forbidding the Legislature to act on the subject matter of a referred law either during the period between its referral and the vote thereon or after approval or rejection by the voters. Section 2 of Art. XVI expressly permits the passage of a law coming within its ambit to be passed, which takes effect upon its passage and is not suspendable by referendum proceedings, provided it be approved by three-fifths of all the members elected to each of the two Houses and be declared to be "an emergency law and necessary for the immediate preservation of the public health or safety." *Dinneen v. Rider,* 152 Md. 343. If legislation comes within the purview of Art. XVI, it is for the Legislature and not for the courts to determine whether an emergency exists. *Culp v. Com'rs of Chestertown,* 154 Md. 620.

Section 2 of Art. XVI provides that no measure which creates or abolishes any office, or changes the salary, term or duty of any officer, or grants any franchise or special privilege or creates any vested right or interest, shall be enacted as an emergency law. The appellant contends that Albert Ward, the Director of the State Department of Assessments and Taxation, is an officer, and that in confiding the administration of the law to him, Ch. 1 changed the duties of an officer. For reasons discussed later we find this proposition unsound and conclude that unless the petitions of referral of Ch. 205 deprived the Legislature of the right to legislate on its subject matter, Ch. 1 properly was passed as an emergency

---

5. See In re Opinion of the Justices, 191 N. E. 33 (Mass.) (referred statute repealed and reenacted by emergency bill). *Cf.* McBride v. Kerby, 260 P. 435 (Ariz.); Ex Parte Statham, 187 P. 986 (D. Ct. App. of Cal.). See also Annotations, 33 A. L. R. 2d 1118, 1130, 97 A. L. R. 1046, 1051; Note, 49 Col. L. Rev. 705, 706-707.

law. Chapter 1 declared that it was "the intention of the General Assembly of Maryland to meet the emergency that has arisen as a result of the suspension of the effect of * * * Chapter 205 pending referral thereof to the voters of Maryland," and the finding of an emergency was a finding the Legislature had the power and the right to make. The Act contained the provision contemplated by Sec. 2 of Art. XVI that it was an emergency measure necessary for the public health and safety, and it was approved by the requisite three-fifths vote. We see no compelling or persuasive reason, in the Constitution or elsewhere, forbidding the Legislature to meet an emergency by legislating, under Art. XVI, on the subject matter of a bill which has been referred.

This conclusion was foreshadowed by the decision in *Hammond v. Lancaster,* 194 Md. 462. There Ch. 86 of the Laws of 1949 enacted the Ober Law, dealing with "Sedition and Subversive Activities." It was approved March 31, to be effective, by its terms, on June 1. After March 31, it became apparent that Ch. 86 would become subject to referendum under Art. XVI of the Maryland Constitution, and its operation suspended. On April 1, Senate Bill 528 was introduced for the purpose of changing Sec. 3 of Ch. 86 in order to make it an emergency measure. Senate Bill 528 became Ch. 310 of the Laws of 1949 on April 22.

In that case below the chancellor found as a fact that at the time of the passage of Ch. 310, and immediately prior thereto, it had become public knowledge that a group of citizens was preparing a referendum petition on Ch. 86. The bill of complaint alleged, *inter alia,* that Ch. 86, as amended by Ch. 310, was illegal and unconstitutional because it deprived the voters of their right to stay the operation of Ch. 86, a right of which they could not validly be deprived. Although he found the Ober Act unconstitutional on other grounds, the chancellor did not agree with this contention. He said "Counsel for the complainants contend this action was taken to deliberately thwart the will of the people to prevent a referendum on the Subversives Act of 1949. Whatever may be the reasons, the Court cannot consider them." In this Court the proponents of the referendum urged in their brief that the

declaration of an emergency in a separate and subsequent amendment was not in accord with the Constitution of Maryland, and that the declaration of an emergency was not made for any valid legislative purpose, but for the sole purpose of preventing suspension of the Ober Act pending the vote on the law. This Court rejected these arguments and held that the Legislature alone had the power to determine whether such an emergency as is contemplated by the Constitution exists and that the transformation of Ch. 86 into an emergency law by the enactment of Ch. 310 "was in substantial compliance with the constitutional requirement."

See also *Hitchins v. Mayor & C. C. of Cumberland,* 215 Md. 315, 325, wherein we held that the City of Cumberland could effectively modify an ordinance after the filing of a referendum against it.

It is to be noted that Ch. 1, not being an appropriation measure, was subject to referendum under the provisions of Art. XVI. Section 2 thereof provides, *inter alia,* "An emergency law shall remain in force notwithstanding such petition, but shall stand repealed thirty days after having been rejected by a majority of the qualified electors voting thereon * * *." Thus, as Ch. 1 declared, the right of referendum on the savings and loan regulatory law was not frustrated—only the right to suspend the operation of the law pending the vote thereon.

The reason we rejected appellant's contention that Ch. 1 could not be an emergency law under Art. XVI since it changed the duties of an officer was because we did not find Mr. Ward to be an officer. (The Court takes judicial notice that he is a most able, efficient and conscientious public servant who holds a position of dignity and importance.) Between 1914 and July 1, 1959, the general functions of the State Department of Assessments and Taxation were performed by the State Tax Commission. For twenty-eight years Mr. Ward served as Secretary to the Commission. He advised the Commission, kept its records, scheduled its hearings and counselled its staff. But for the fact that the Attorney General was by law designated as the Commission's counsel,

Mr. Ward, a lawyer, could have been classified as its general counsel. As such he would not have been a State officer in the constitutional sense. *State Tax Comm. v. Harrington,* 126 Md. 157. His administrative non-legal duties did not make him an officer, since he exercised no power not derived from the Commission. *Baltimore City v. Lyman,* 92 Md. 591. Chapter 757 of the Laws of 1959 abolished the State Tax Commission and in its place established the Maryland Tax Court and the State Department of Assessments and Taxation. To the latter were assigned the functions of supervising assessments and the administration of corporate affairs. That the Director of the Department was not intended to be an officer anymore than was the Secretary of the Commission is shown, we think, by the fact that he is not required by law to take an oath or to file a bond, that he is a Merit System employee, and that, although the Constitution forbids the raising of the salary of an officer during his term of office, Mr. Ward's salary has been raised twice by the Legislature since he became Director of the Department. Chapter 42 of the Laws of 1960 raised his salary $555.00 as a scale adjustment and $577.00 as a seniority increment (see "Personnel Detail of the Maryland State Budget for the Fiscal Year ending June 30, 1962," p. 19). By Ch. 69 of the Laws of 1962 his annual salary was increased from $14,427 to $15,000, effective July 1, 1962. The Department of Budget and Procurement, in preparing the budgets, the Governor in submitting them, and the Legislature in adopting and passing them, had the view that Mr. Ward was not an officer. Under the tests applied in *Gary v. Board of Trustees,* 223 Md. 446, and the cases therein cited, we agree, and, since he was not an officer, Ch. 1 did not violate Art. XVI in putting the administration of the emergency law into his hands.

We turn to the argument that the appointment of the receiver *ex parte* was unjustified. It is claimed that (a) there was no showing of emergency and improper operation of First Continental sufficient to warrant *ex parte* action; (b) the exhibits required by Maryland Rule 170 b 2 were not filed with the petitions; and (c) First Continental was denied due process

of law by the trial court's refusal to consider its pleadings before the appointment of the receiver. The contentions may be considered together.

Sec. 160L of Ch. 1 provides that if the irregularities complained of in a final order of the Director are not corrected,[6] or if any irregularity complained of in a petition for the appointment of a conservator is not corrected,[7] "or in the case of any emergency, the Director, if in his judgment the public interest requires, acting through the Attorney General, may apply to an equity court for the city or county where the association has its principal Maryland office for the appointment of a receiver, who may be the Director."

Section 160L goes on to provide that the court is authorized to appoint a receiver if it finds that the association: "(1) Is in an impaired or insolvent condition; or (2) is in substantial violation of any valid and applicable law or regulation; or (3) is concealing any of its assets, books or records; or (4) is conducting an unsafe and unsound operation."

The Section concludes: "The procedure in such receivership action, shall be in all other respects in accordance with the practice in such court, including all rights of appeal and review provided by law."

First Continental says that the petition and exhibits failed completely to disclose "the existence of an emergency, con-

---

6. Sec. 160H authorizes the Director to order discontinuance of any illegal practices and provides for departmental hearings and judicial review of a resulting final order.

7. Sec. 160K provides that if an association fails or refuses to obey a final order and the Director believes the public interest may be served by the appointment of a conservator, he is authorized, acting through the Attorney General, to apply to an equity court for the appointment of one, and the court is authorized to appoint one if it finds that the association "(1) Is in an impaired or insolvent condition; or (2) is in substantial violation of any valid and applicable law or regulation; or (3) is concealing any of its assets, books or records; or (4) is conducting an unsafe or unsound operation." Within six months of the date of appointment "or within such time as the court may order," the association is to be returned to its board of directors "or a receiver shall be appointed as hereinafter provided."

comitant with improper operations, justifying summary appointment of a receiver." It argues that no administrative action and no final order preceded the request for a receiver and, therefore, the court must find an emergency as a jurisdictional prerequisite, if relief is to be granted under Sec. 160L.

We do not agree. The statute does not make the court's jurisdiction depend on a judicial finding of an emergency but only on a finding of one or more of the four specified conditions. Section 160L contemplates that the Director shall determine whether a condition of affairs exists which requires the immediate invocation, in the public interest, of judicial action to place the property of an association in the hands of a receiver. The meaning of the term "emergency" is controlled by the circumstances and the context in which it is used. We think it was used in Sec. 160L in the sense of a pressing necessity or as meaning any event or combination of circumstances which calls for immediate action or remedy. *Baltimore v. Hofrichter*, 178 Md. 91, 100.

The petition alleged that as a result of an extensive and exhaustive examination of First Continental, conducted for the Director by a staff of examiners, the Attorney General had received written instructions from the Director to institute proceedings for the appointment of a receiver for First Continental pursuant to Sec. 160L, and for the forfeiture of its charter and its dissolution pursuant to Code (1957), Art. 23, Sec. 84. Filed as Exhibit A with the petition were the written instructions which stated that, as a result of the audit and examination referred to in the petition, the Department had determined that First Continental was in an "impaired or insolvent condition," as well as that it was "in substantial violation of certain laws pertaining to such associations, and [was] conducting an unsafe and unsound operation." It said that the Department had determined that First Continental had been guilty of such misuse and abuse of its powers and franchises as to make proper in the public interest the forfeiture of its corporate charter and its dissolution, as well as that a state of emergency existed in regard to the protection and safety of the deposits of First Continental's free shareholders.

The petition alleged further that the guaranty stock of the Association was wholly owned by a foreign corporation which was owned or controlled by J. Kenneth Edlin and Pearl P. Edlin, his wife, and that J. Kenneth Edlin had been sentenced to four years imprisonment on June 9, 1941, for violation of the Securities Exchange Act and the Postal Fraud Statute, and that on December 8, 1961, he had entered a plea of *nolo contendere* in the United States District Court for the District of Maryland for a violation of the Postal Fraud Statute and was presently awaiting sentence. It alleged that during 1960 and 1961 the Association had made disbursements of some $35,000 in weekly amounts, which increased from $150.00 a week to $162.50, to $175.00, to $225.00, to $300.00, and finally to $450.00, to J. Kenneth Edlin, and disbursements of $11,500 to Pearl P. Edlin, his wife, over and above her salary as secretary-treasurer, and that these disbursements "constituted abuse and misuse of the corporate powers and franchises of the association."

The petition alleged further that as a result of the examination of the Association there had been discovered the following facts, each of which alone afforded a basis for the relief sought: ·

(a) The association had free share accounts of approximately $3,771,590.00 and loan commitments of $4,505,307.89, and there were but six loans outstanding. One loan was $300.00 to a holder of a free share account; a second loan was for $7,000; and the rest of the loan commitments consisted of only four loans, which were made to corporations engaged in speculative real estate developments.

(b) The $7,000 loan was secured by real estate in Florida "in violation of Article 23, Section 150 of the Annotated Code of Maryland (1957 Ed.) and of Article 23, Section 161 of the Annotated Code of Maryland (1961 Supp.)."

(c) One of the mortgage loans of the Association was made for an amount in excess of the Association's own appraised value of the real estate conveyed by the bor-

rower as security for the loan, and in the opinion of the Department this $798,222 loan was secured by land having a fair market value of only $483,000.

(d) One of the mortgages of the Association was not a first lien and the Association did not hold the first lien to which its lien was subordinate. This loan was in the amount of $843,750 and was junior to another lien in the amount of $2,875,000.

(e) One loan in the amount of $231,250 was not secured by a recorded mortgage or other security, and the lots in the land of the developer to whom the loan was made were all encumbered by individual mortgages.

(f) No mortgage or deed of trust or other security was ever executed or incurred in favor of the Association to secure a loan in the amount of $2,625,000.

The petition averred that each of the facts in the lettered paragraphs constituted abuse and misuse of corporate powers and franchises and each evidenced an unsafe and unsound operation. There were filed as exhibits to each allegation details of the transaction which had been taken from the books of the Association and which had been summarized and commented on by the examiners.

First Continental did not file an answer to the petition, but relied on its motion to stay or dismiss the proceedings and on its demurrer, both of which were offered to the court during a colloquy between the court, the Attorney General and counsel for the appellant, as to whether a receiver should be appointed immediately. The cases have long held that if there is no traverse to the allegations of fact of the pleading seeking a receiver, the trial court acts on its averments and the exhibits, and this Court on appeal limits its inquiry accordingly, being "bound to accept as true all facts properly alleged in the bill and exhibits." *So. Md. Agri. Ass'n v. Magruder,* 198 Md. 274, 279. See also *Baltimore Skate Mfg. Co. v. Randall,* 112 Md. 411; *Shannon v. Wright,* 60 Md. 520; *Frostburg Build. Ass'n v. Stark,* 47 Md. 338; *Voshell v. Hynson,* 26 Md. 83; *Rose v. Bevan,* 10 Md. 466, 470.

We think that the allegations of fact which the petition and

the exhibits presented to the court, and which it might properly accept as true as the case came to it, show that the Director's determination that an emergency existed was sound and that a case had been made for the immediate appointment of a receiver for the protection of existing and potential free shareholders of the Association. If the receiver had not been appointed immediately and the filing of the petition had come to public notice, in all probability a run on the Association and inequitable and discriminatory results would have followed. If the Director had delayed seeking the appointment of a receiver, it may be inferred that the Association undoubtedly would have continued to accept deposits to the detriment of those trusting it in ignorance of the nature of its operations, which were not in conformity with those of true savings and loan associations, existing as they do traditionally for the purpose of promoting thrift and individual home ownership. See Code (1961 Supp.), Art. 23, Sec. 160A (a); *Securities & Exch. Com. v. American Internat'l S. & L. Ass'n,* 199 F. Supp. 341 (Md.); Sause, "Association 'For the Meritorious Purpose of Mutual Benefit': A Chronicle of the Building and Loan Industry in Maryland from 1852-1961," 22 Md. L. Rev. 1, 91.

The allegations of the petition and exhibits not only presented on their face a case which rendered the appointment of a receiver *ex parte* proper under Sec. 160L—they also met the requirements which were said in 1857 in *Blondheim v. Moore,* 11 Md. 365, 374, to be necessary to warrant such an appointment; that is, (1) the power of appointment is to be exercised with great circumspection; (2) it must appear that the claimant has title to the property and that a receiver is necessary to preserve the property; (3) a receiver is not to be appointed merely because it can do no harm; (4) fraud or imminent danger, unless intermediate possession be taken, must be shown; and (5) the necessity must be stringent for the appointment of a receiver before the defendant is first heard in response to the application.

The allegations of fact in the instant case are as persuasive as those found sufficient for *ex parte* appointments in such cases as *Hagerstown Furniture Co. v. Baker,* 155 Md. 549,

and *Frostburg Build. Ass'n v. Stark,* 47 Md. 338. (See also the other cases cited above in footnote 2.)

There is no merit to the contention that the exhibits filed with the petition did not comply with Maryland Rule 170 b 2, which requires the filing of originals or copies of all written instruments "necessary to show the character and extent of the plaintiff's interest in the action." The petition was filed pursuant to the statutory authorization of Ch. 1, and the status of the Director and Attorney General as petitioners in the public interest is set out in that Act. Their official positions and interests are alleged in the petition, and this was sufficient. The exhibits which were filed sufficiently supported and supplemented the allegations in the petition of every material fact relative to impairment or insolvency or of unsound and unsafe operation.

The appellant concedes that it has long been a part of Maryland equity practice to appoint a receiver without the presence of or notification to the owner of the property to be administered, if the exigencies of the situation demand it. The contention is that since counsel for First Continental were present as a result of having been notified by the Attorney General that an application for a receiver would be filed, their motion to dismiss and their demurrer to the petition should have been formally considered and acted on. The motion to dismiss or stay the proceedings was based on the fact that earlier in the day First Continental had filed a bill of complaint in the Circuit Court of Baltimore City against the Director of the State Department of Assessments and Taxation and the Attorney General, seeking declaratory and injunctive relief. The motion alleged that the bill alleged that First Continental was solvent and was conducting a safe, sound and lawful operation and that no facts existed which would justify appointment of a receiver for it, threatened by the Attorney General. The motion said that the bill alleged that Ch. 1 changed Albert Ward's duties as an officer of the State and challenged the existence of Ch. 1 in view of the Attorney General's opinion that Ch. 205 had not been validly referred.

The demurrer assigned as reasons for the legal insufficiency of the petition the change in Ward's duties, the failure to allege an emergency requisite to warrant the appointing of a receiver, and that the allegations of the petition were vague and indefinite.

First Continental did not file an answer to the petition seeking appointment of a receiver until some time after the appointment. The generalities as to solvency and the conduct of a safe and lawful operation of the Association in the bill filed in Baltimore, and referred to in the motion to stay or dismiss, could not serve as proper traverses to the specific allegations of the petition and exhibits of impairment or insolvency and unsafe and unsound operations. The appellant was offered an immediate opportunity to prevail on the merits. Judge Shook said to its counsel: "You may move to have the appointment of a receiver quashed on two days' notice to the other side and a hearing will be afforded you." The appellant did not follow the suggestion; and, although it later filed a combined demurrer and answer, it did not seek a hearing but chose to appeal from the order appointing the receiver.

We think the court did not err to the prejudice of the appellant in appointing the receiver without acting for the record on the motion to stay or dismiss and the demurrer, although it would have been preferable, under the circumstances, to have heard and to specifically have passed on the questions raised as to the constitutionality and effectiveness of the law under which relief was sought.

Although Judge Shook did not do this, the appellant was not prejudiced. The sufficiency of the allegations of a petition seeking the *ex parte* appointment of a receiver necessarily must be judged by the trial court, and by this Court on appeal, as if a demurrer had been filed. *State Founders, Inc. v. Oliver,* 165 Md. 360. Judge Shook, in appointing the receiver under the provisions of Sec. 160L of Ch. 1 of the Laws of the Special Session of 1961, necessarily acted on the premise that that Act was valid and in effect, and that the allegations of the petition justified the drastic relief prayed for and granted, and we have held that the premises were sound. The Circuit Court for Montgomery County was not deprived of jurisdic-

tion or of the right to appoint a receiver because appellant sought to avoid that result by filing a bill in another jurisdiction earlier in the day (upon which no action had been taken) for declaratory and injunctive relief against the statutory official petitioners in Montgomery County, the home of First Continental.

No constitutional or legal right of First Continental was infringed inasmuch as it was afforded an almost immediate opportunity to have a hearing on the defenses, factual and legal, it sought to raise, somewhat inartificially, on the day of the appointment.

*Order affirmed, with costs.*