BIGGS ET AL. *v.* MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION ET AL.

[No. 1 (Adv.), September Term, 1973.]

*Decided June 21, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Francis X. Gaegler, Jr.*, for appellants.

*Peter F. O'Malley*, with whom were *Kahler, DeBlasis, Shipley & O'Malley* on the brief, for Washington National Arena Limited Partnership; *Joseph S. Casula, County Attorney*, and *John R. Barr, Associate County Attorney*, on the brief for Prince George's County; *Robert H. Levan* and *Sanford E. Wool* on the brief for Maryland-National Capital Park and Planning Commission.

SINGLEY, J., delivered the opinion of the Court.

This case is a frontal attack by Mr. Biggs and a group of his fellow citizens and property owners against the construction of a sports arena by Washington National Arena Limited Partnership (the Partnership) on a 75-acre tract at Largo, Prince George's County, Maryland, purchased for park purposes by Maryland-National Capital Park and Planning Commission (the Commission), which had been leased by the Commission to a corporation which then assigned its lease to the Partnership.

The attack was mounted by the filing in the Circuit Court for Prince George's County of a bill of complaint in equity against the Commission, the Partnership, Prince George's County (the County) and others for injunctive and declaratory relief. While the bill of complaint, as originally filed, utilized what was characterized by the chancellor as a

"scatter-gun" approach, the amended bill of complaint brought only against the Commission and the Partnership sharpened the issues only slightly. By leave of court, the County was permitted to intervene. In any event, the matter came on for hearing in the Circuit Court for Prince George's County on the demurrer of the County, or alternatively, on the motion of the County for summary judgment. From an order sustaining the County's demurrer and from an order and a decree declaring the lease and the ordinances enacted to implement the lease to be valid, the complainants have appealed.

At argument before us, the issues have been narrowed to two questions, stated by the appellants, however, in a more prolix fashion. Basically, the questions are these:

    (i) Is County Bill 167-72, approved on 12 October 1972, an emergency bill which amended the text of the Prince George's County zoning ordinance, and permitted commercial recreational facilities on land leased from a public agency in an R-R (rural residential) zone invalid as an emergency measure and subject to referendum?

    (ii) Is County Bill 160-72, approved on 19 October 1972 as an emergency measure, which purported to transfer capital funds of $2,000,000.00 from a proposed administrative office building to the construction of roads and a sewage treatment plant at Largo invalid as an emergency measure and subject to referendum?

(i)

We regard our opinion in *Prince George's County, Maryland v. Maryland-National Capital Park and Planning Commission,* 269 Md. 202, 306 A. 2d 223 (1973) as clearly dispositive of the attack on County Bill 167-72. Here, the County Council of Prince George's County was sitting as the district council under the Regional District Act, Ch. 780 of the Laws of 1959, as amended, a public general law which takes precedence over the Prince George's County Charter.

As a consequence, the bill was not subject to the Charter provisions respecting referendum and emergency legislation.

(ii)

As regards County Bill 160-72, which transferred $2,000,000.00 from capital funds budgeted for a county administration building to the construction of access roads and sewer facilities at Largo, apparently in reliance on Charter, Prince George's County (1970) § 818 and § 824, *see Prince George's County v. Beard*, 266 Md. 83, 91-92, 291 A. 2d 636 (1972), this was enacted as an emergency measure in the manner contemplated by Charter § 317, and was declared to be valid by the court below. While the appellants urge that no true emergency existed, it must be remembered that the Council alone had the power to determine whether there was an emergency as contemplated by the Charter and its determination is conclusive and not subject to judicial review. Except for *Baltimore v. Hofrichter*, 178 Md. 91, 99, 100, 11 A. 2d 375 (1940) and *Geisendaffer v. Mayor and City Council*, 176 Md. 150, 3 A. 2d 860 (1939) which are possibly distinguishable, we have consistently held that a legislative determination of emergency is conclusive and not reviewable, *Potts v. Governor*, 255 Md. 445, 448, 258 A. 2d 180 (1969); *Heaton v. Mayor and City Council of Baltimore*, 254 Md. 605, 255 A. 2d 310 (1969); *First Continental v. Director*, 229 Md. 293, 302, 183 A. 2d 347 (1962); *Hammond v. Lancaster*, 194 Md. 462, 476, 71 A. 2d 474 (1950); *Norris v. Baltimore*, 172 Md. 667, 686, 192 A. 531 (1937); *Culp v. Commissioners of Chestertown*, 154 Md. 620, 623, 141 A. 410 (1928).

As an emergency bill, however, it is not insulated from referendum under § 319;[1] it simply remains in force, despite the filing of a petition signed by 10,000 qualified voters, and its effectiveness persists until 30 days after it has been rejected by a majority of the qualified voters of the county voting thereon, should it be so rejected. While this question

---

1. It is clear from the record that the transfer was not from the County's current expense budget, Charter § 807, but from the Capital budget, § 806 and was therefore not insulated from referendum by § 319 (2).

356

was dealt with only obliquely in the opinion of the court below, and not at all in the order which was entered on 13 December 1972, we are satisfied that the order should have declared that the complainants were entitled to petition County Bill 160-72 to referendum, and should be so modified.

> *Order of 13 December 1972 modified, and as modified, affirmed; decree of 16 December 1972 affirmed; costs to be paid one-half by appellants and one-half by appellees.*